Frank Liu

304 S. Jones Blvd #3416

Las Vegas, NV 89107

818-835-0498

frank.liu.96@gmail.com

Pro Se Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

Frank Liu                                              **Case #1:22-cv-09084-JHR-OTW**

      Plaintiff,

                                   **AMENDED COMPLAINT**

      vs.

The Nielsen Company (US) LLC

        and

TNC US HOLDINGS

      Defendants.

**Table of Contents**

Introduction…………………………………………………………………....1

Jurisdiction and Venue……………………………………………………..2

Parties…………………………………………………………………… 2

Laws……………………………………………………………………….3

Background Details……………………………………………………....3

Details about FSLA Violations…………………………………………...10

Additional Discrimination Polices of The Nielsen Company……………………..11

Causes of Action…………………………………………………………...12

Cause of action for Wages Issues in Violation of FSLA…………………………...16

Statute of Limitations is Still Valid……………………………………………16

NYHR Law and Governor Cuomo's COVID-19 Executive Orders tolling Statute of Limitations..16

Equitable tolling……………………………………………………………...17

Estoppel and Promissory Estoppel……………………………………………...18

EEOC deceived by Nielsen about records location…………………..……………………18

Tolling of Statute of Limitations……………………………...…………………..20

Defendants' Gas lighting "single cause of action"…………………………...……………21

Nielsen Deceit……………………………………………………………...23

Continuing Wrong Doctrine………………………………………………………...24

Should the Case not Stay in New York, Plaintiff Requests the Case be Transferred to District of Delaware instead of Dismissed……………………………………………………..25

Regarding Amended Complaint…………………………………………………….26

Jury Trial Demand……………………………………………………………...27

Prayer for Relief…………………………………………………………………27

**Table of Authorities**

Title VII of the Civil Rights Act of 1964 (Title VII)…………………………………3, 12,13, 14, 17

.

New York State Human Rights Law……………………………………………3,12,13, 14, 16, 17

Continuing Wrong Doctrine…………………………………………………………………3, 24

Wages and the Fair Labor Standards Act…………………………………………………..3, 16

10 Del. C. § 8118(a)……………………………………………………………………………25

CPLR 205(A)…………………………………………………………………………………25

New York Consolidated Laws, General Obligations Law - GOB § 5-336…………………24

28 USC §§ 1404………………………………………………………………………………1, 25, 26

Americans with Disabilities Act of 1990 (ADA)…………………………………………..3, 14

**Executive Orders**

New York Executive Order No. 202.8…………………………………………………………16, 20, 21

New York Executive Order No. 202.67…………………………………………………………17, 21

**Cases**

Brash v Richards (195 A.D.3d 582 [2d Dept 2021])……………………………………………21

*McLaughlin v. Snowlift, Inc., 2021-05769, ___ A.D.3d ___ [2d Dep't Mar. 8, 2023]*…………..*16, 17*

*Haines v. Kerner, 404 U.S. 520 (1971)*……………………………………………………………*23*

**Amended Complaint**

**Introduction**

1. I am amending my complaint to make it more clear about the various claims due to Defendants' persistence/gas lighting that my lawsuit is a single cause of action which is untrue. You can see the break-down of my Amended Complaint is similar to Dkt. 26 "Updated Case Management Conference Statement" for the case 4:21-cv-07313-JSW (filed 1/28/2022 – See **Exhibit J**) filed in US District Court for the Northern District of California.

2. Defendants keep saying it is a single cause of action and I have always disagreed. The Court Order form Northern District of California even stated "**Plaintiff Frank Liu ("Plaintiff"), proceeding in forma pauperis, filed this suit alleging discrimination and retaliation in violation**" (See **Exhibit Q**). It is not "single cause of action" like Defendants' keep saying. Furthermore, I am going to establish why the case is not time-barred. In the event that the Court disagrees with my position it is not time-barred, then I do ask the Court transfer my lawsuit to District of Delaware instead of dismissal because they have a savings statute that allows claims to be re-brought within 1 year from involuntary dismissal (basing this on the filing date in the Northern California) and the Delaware Savings Statute applies even to lawsuits brought in the wrong state forum. This Court in Southern District of New York has the authority to transfer based on 28 USC §§ 1404. Plaintiff has been perusing justice for what happened for years. Starting with the EEOC which took about 1.5 years to the timely filed lawsuit in Northern District of California within the 90 days. In the lawsuit filed in Northern District of California, Defendants delayed the process by filing three (3) motion to dismiss where finally on February 3, 2022 they filed their Second Amended Motion to Dismiss which was several months after the original lawsuit was filed. It wasn't until September 30, 2022 where the Court granted Defendants' Second Motion to Dismiss. After the lawsuit was dismissed for lack of personal jurisdiction, the lawsuit was refiled within 30 days in the Southern District of New York.

1

**Jurisdiction and Venue**

3. Jurisdiction is proper in the Southern District of New York because both Nielsen Company (US) LLC and TNC US Holdings are headquartered in New York.  Furthermore, should the lawsuit be be considered time-barred in SDNY, Plaintiff also wants to note that Nielsen Company (US) LLC which was Plaintiff's former employer is incorporated in Delaware and Delaware has a savings law that allows cases to be refiled within 1 year of dismissal (relating back to the Northern District of California lawsuit) and that is a broad statute that applies to cases filed in the wrong jurisdiction.  NY also has a savings law (N.Y. CPLR 205-A), and this case was filed within 6 months but N.Y. CPLR 205-A might not be as broad as Delaware's savings statute.  However, Plaintiff believes there are factors that need to be considered in the SDNY Court that allows Plaintiff's case to proceed as Plaintiff believes this case is not time-barred here either based on a number of factors which Plaintiff will outline in this Amended Complaint.

**Parties**

4. Plaintiff is a Chinese American male who worked for Nielsen for over 3 years.  Right now, Plaintiff is not a resident of New York and has not been in New York since 2019.  Plaintiff is also suing for over $75,000.

5. The Nielsen Company (US) LLC conducts the TV Ratings.  TNC US Holdings is believed to be a parent company of The Nielsen Company (US) LLC.  Both New York and Delaware has personal jurisdiction over Nielsen.  There is diversity at play here so the proper Court is federal court as the only place that appears to have personal jurisdiction over Nielsen is where the company is headquartered or where Nielsen is incorporated.

**Laws**

6. Plaintiff is suing based on *Title VII of the Civil Rights Act of 1964 (Title VII)*, *New York State Human Rights Law, Wages and the Fair Labor Standards Act (FSLA)* and *Americans with Disabilities Act of 1990 (ADA)*. In addition, he is asserting the Continuing Wrong Doctrine and other things mentioned in this Amended Complaint. There might be some other laws that come into play here, but Plaintiff is not a lawyer.

### Background Details

7. Frank was the top performer on the SWAT team hired by Luke Berglin in 2017. Luke Berglin transferred jobs to a different position. A new manager named Tanner Tate was brought to manage the SWAT team in late 2018.

8. Frank Liu received raises throughout his career at Nielsen. He was a top performer and earned bonuses every month.

9. On February 20, 2019, when Frank Liu was working in the NY LPM market, he was picked on and harassed by new SWAT market manager, Tanner Tate during a conference call where Tanner Tate humiliated Frank Liu by telling him to stop talking even though it was Frank Liu's turn to talk about tips on how to gain access to secured buildings for recruitment. Tanner Tate told Frank Liu that he can not talk for the rest of the call which humiliated Frank Liu in front of the other teammates. Tanner Tate asked Frank Liu to stay on after the conference call ended, and Frank Liu expressed to Tanner Tate that it was rude what happened. Tanner Tate was dismissive and aggressive in the call. Tanner Tate needed to go onto another conference call and asked if Frank Liu wanted to continue the conversation later, but Frank Liu declined as he didn't see it as productive to do so. Tanner Tate disconnected the call as he needed to jump on another conference call.

10. Later that day, Tanner Tate, called Frank against Frank Liu's wishes not to continue the conversation about the conference call earlier that day and wanted to continue talking about it. Frank Liu informed Tanner Tate that he felt humiliated and it was rude how he was treated. In response, Tanner Tate told Frank Liu "Don't be a chink." Frank Liu told Tanner Tate what he said was racist. Tanner Tate dismissed Frank Liu's objection to being called a chink threatening Frank Liu if he went to HR, they would not believe him.

11. Since February 20, 2019, Frank Liu had anxiety over what happened, and would no longer voluntary speak on conference calls. Instead, he would type responses in the Google Hangouts

chatbox.  Only if asked a direct question by Tanner Tate requiring a verbal response, would he speak on conference calls.

12. On March 4, 2019 a teammate made comments in group text that was offensive and racist directed against Chinese people.  Specifically she took a picture of Chinese people in New York's Chinatown and her text comments offended Liu.  Frank Liu stated it was racist, but Tanner Tate didn't think it was racist and defended the inappropriate comments.

13. Tanner Tate calling Frank Liu a chink on February 20 and Tanner Tate brushing off racist comments in group chat against Chinese people on March 4 affected Frank Liu.  He contacted Nancy Philips (Chief Human Resources Officer) sometime in March in hopes of reporting these incidents to her.  Nancy Philips declined to speak to Frank Liu.  Instead it was directed to a lower HR officer, Sandee Crossley which Frank Liu spoke to, but Sandee Crossley was dismissive and did not respect Frank Liu's request for anonymity as she put a HR conference call invite in Frank Liu's google calendar which would be easily seen by Tanner Tate.  Frank Liu was fearful of retaliation and wanted to speak to Nancy Philips directly, but Nancy Philips was not open to speaking to Frank Liu.

14. Frank Liu sprained his ankle on March 14, 2019 while recruiting homes in the NY LPM market.  He emailed pictures of his sprained ankle to Tanner Tate on March 18, 2019.  Tanner Tate was OK with Frank Liu continuing to work and recruit homes.

15. Frank Liu emailed Nancy Philips on March 20, 2019 that he was going to file a report with the EEOC in regards to harassment, discrimination and retaliation (see **Exhibit A**).  Nancy Philips still refused to speak to Frank Liu.  She handed it off to her second in command Shannon Buggy (Senior Vice President Global Human Resources).

16. Frank Liu requested to get an X-Ray for his ankle as he wanted to see if anything was broken. During this time Frank Liu continued to work full-time.

17. On April 1, 2020, (less than 2 weeks after emailing Nancy Philips about wanting to file with the EEOC), Tanner Tate and Tania Rosello (Worker's Compensation Ambassador at Nielsen) told Frank Liu not to work anymore and to go see a doctor about his ankle.  Frank Liu went to a doctor, and X-Rays confirmed nothing was broken.  Frank Liu was relieved and wanted to return to work that same day.  Tanner Tate refused to allow Frank Liu to go back to work even though he was OK with Frank Liu working from March 14 to April 1 despite having sprained his ankle.  Tania Rosello informed Frank Liu that he needed a return to work letter.  The hospital Frank Liu went to does not provide

return to work letters, but did provide Frank Liu with an ankle brace, and referred Frank Liu to see a podiatrist.

18. Frank Liu was prohibited from speaking to Shannon Buggy about his complaints about racism, discrimination and retaliation because he was directed not to work and speaking to HR would be considered paid work.  Frank Liu emailed Shannon Buggy on April 2, 2019 about this, and she stated they can "connect" after Frank Liu was cleared to go back to work (See **Exhibit B**).

19. On April 4 2019, Frank Liu went to Ridge Foot and Ankle Associates and saw Dr. Patel.  He received a return to work letter. The doctor stated Frank Liu can return to work while wearing an ankle brace and if possible, less walking.

20. On April 4, 2019, in the parking lot, Frank Liu called and spoke to Tania Rosello who agreed that the doctor's letter was fine and this doctor said Frank Liu could go back to work and that he should work out the "if possible" part with Tanner Tate.  This is a direct quote of the conversation:

Frank: "So what is this? If possible accommodate areas with less-"

Tania: "You and Tanner will discuss that piece. And that's what I'm going to put in the email cause you and he know better than me. You know the area that you work. And if you all can work it out, that's perfectly fine because the doctor is- this doctor is saying that you can wear your brace and you can work. So that is fine with me."

21. Despite what Tania Rosello stated on April 4, 2019, Frank Liu was prohibited from going back to work the next day. Tania Rosello wanted Frank Liu to find out how many hours he could walk a day.  Frank Liu was unable to find out that information from Ridge Foot and Ankle Associates (Dr. Patel's office) as they refused to respond to his calls or emails regarding Nielsen's question of how many hours Frank Liu can walk a day.

22. On April 8, 2019 Maria Flores (Sedgwick Claims Services) emailed Tania Rosello (Nielsen Workers Compensation) that the number of hours Dr. Patel would limit Frank Liu walking per day was 4 hours.  Driving would not be affected so Frank Liu can drive as much as he needs for work.  Despite Tania Rosello finding out that the number of hours for walking was set at 4 hours a day by Dr. Patel, Tania Rosello kept on asking Frank Liu to find out how many hours Dr. Patel would allow him to walk per day.  He was never able to get an answer from Dr. Patel's office.  The reason why we know that on April 8, 2019 Maria Flores and Tania Rosello found out it was 4 hours of walking per day is because Frank Liu requested Sedgwick Claims Services to release notes for the case as allowed by law and this

request was a long time after Frank Liu was already terminated from Nielsen.  This is clear that Nielsen was gas lighting Frank Liu and deceiving Frank Liu to keep Frank Liu from going back to work.

23. Because Nielsen would not allow Frank Liu to go back to work despite Dr. Patel's letter, and Frank Liu was unable to get a reply from Dr. Patel's office about how many hours he was allowed to walk a day, Frank Liu requested to be able to see a different doctor.  Tania Rosello told Frank Liu he needed to find a doctor that took Nevada's workers compensation fee schedule.  Frank Liu never consented to have the work injury filed in Nevada as he was not living in Nevada since transferring from the Las Vegas Metered Market back in 2016 and the work injury happened in the NY LPM area. The New York market includes parts of New Jersey and New York so Frank Liu was recruiting homes in both New York and New Jersey.  Frank Liu was staying at a hotel in New York City around this time.

24. Frank Liu contacted a doctor's office, but after giving them the worker's compensation information, discovered his claim was denied because the doctor's office tried to contact Sedgwick for authorization to treat Frank Liu.

25. Frank Liu contacted Maria Flores (Sedgwick) and was told his claim was being denied because under Nevada law, there needs to be an obstacle that led to Frank Liu's injury.  Frank Liu asked if stairs are considered obstacles, and was told they are.  Maria Flores said Frank Liu never told her about stairs which was untrue as Frank Liu did tell Maria Flores about stairs.  There is documentation of stairs being mentioned, and Sedgwick had wrongfully denied Frank Liu's case.

26. Frank Liu was unable to see a doctor when the case was denied because he did not have personal health insurance and work injuries need to be through workers compensation and not personal health insurance.

27. On April 18, 2019 Chris Gordon (Nielsen HRBP) emailed Frank Liu a letter stating if Frank Liu could not get a doctor's note for return to work by April 22, then he would be placed on unpaid personal leave until he could get a doctor's note to clear him to go back to work (see **Exhibit C**).  The same letter was mailed by Nielsen to Liu where Liu was in New York City.  Nielsen did not accept Dr. Patel's return to work letter because they had problems with "if possible, accommodate areas with less walking."  Frank Liu did not think the "if possible" was mandatory as it stated "if possible."  Frank Liu wanted to go back to work but Nielsen did not allow him to.

28. Frank Liu spoke to Tracy Staines about not being able to go back to work, and in the call Frank Liu mentioned again that there was racism, discrimination and retaliation going on and had things to report.  Frank Liu also told Tracy Staines he was told not to clock work done like calling

managers back.  Tracy Staines was dismissive when Frank told her that as she stated she was there to help Frank Liu get back to work and that matter was a separate thing and would be handled separately.

29. Frank Liu was able to successfully contest his workers compensation claim being filed in the wrong state because he showed Nielsen that the Nevada C4 was signed under duress as next to his signature, it even said "under duress" as Frank Liu had never agreed to have his claim filed in Nevada. Sedgwick agreed to transfer the claim to New Jersey (as specifically the injury happened in New Jersey when recruiting in Newark, NJ) and the claim would be open and not in denied status.

30. On April 19, 2019, Frank Liu was contacted by Sedgwick New Jersey and told he could go to Concentra Urgent Care for a doctor's appointment on Saturday April 20, 2019.  He was informed that they would have his case information already.  Frank Liu called the clinic on Saturday April 20, 2019, but was told that Sedgwick failed to send them the worker's compensation case information so was unable to go to the clinic, and Sedgwick was closed over the weekend (Saturday 20th and Sunday 21st) so the clinic would not be able to get Frank Liu's claim information to see Frank Liu.

31. On Saturday April 20, 2019 Frank Liu was frustrated about how dismissive Tracy Staines was and how he was unable to communicate with top HR about his complaints about racism, discrimination and retaliation, so Frank Liu sent an email titled "Formal Complaint Against Tanner Tate" and specifically mentioned there was racism, discrimination, retaliation and harassment in that email (**see Exhibit D**).  The email was sent where Liu was staying in New York City.  Frank Liu sent the email to Shannon Buggy (Senior Vice President Global HR), Nancy Philips (Chief Human Resources Officer) and David Kenny (CEO of Nielsen).  In the email, Frank Liu also stated, he was thinking about going to the EEOC unless HR acts to correct the situation.

32. On April 23, Frank Liu went to Concentra Urgent Care and received a full return to work letter.  He called Tracy Staines (Vice President Nielsen Human Resources) and informed her he received a full return to work letter, and after asking permission to text her the letter, Frank Liu texted Tracy Staines the full return to work letter at 2:58 PM EST (see **Exhibit E**).

33. Although the "Formal Complaint Against Tanner Tate" email sent on April 20, 2019, Frank Liu also asked the recipients to confirm receipt of email, neither Shannon Buggy, Nancy Philips or David Kenny had confirmed receipt of the email complaint.  Because of that, Frank Liu texted Tracy Staines asking her if she could confirm receipt of that email as she was working with Shannon Buggy.

34. At 4:59 PM EST, Tracy Staines asked Frank Liu if they can have a call at 5:30 PM EST that day. Frank agreed. Although Frank Liu received the full return to work letter, he still needed Nielsen to review the note and give him permission.

35. At or around 5:30 PM EST, Frank Liu had a conference call with Shannon Buggy and Tracy Staines. Shannon Buggy informed Frank Liu he was terminated from his job because they lost faith in Frank Liu's ability to do his work. Frank Liu had the 5th most signs in the entire nation in 2018 for membership representatives at Nielsen so what they said didn't make too much sense. Frank Liu's ability to do his job was never an issue. Frank Liu suspected Nielsen might retaliate against him for wanting to go to the EEOC about racism, discrimination and retaliation so had secretly recorded the conversation because New York and New Jersey are one party consent states. Frank Liu was correct. Nielsen was retaliating by terminating his employment about 2.5 hours after texting the full return to work letter to Tracy Staines.

36. In Nielsen's EEOC response filing, Nielsen claims that over "approximately six week period of time" Frank Liu "refused to return to a medical provider to get updated documentation" in order to return to work (**Exhibit F**). This is untrue, as April 1, 2019 was when Frank Liu was told not to work anymore, and was terminated on April 23, so this was not 6 weeks. Frank Liu also went to 3 doctors, and had to fight to have his workers compensation claim denial overturned/transferred. Frank Liu was fired about 2.5 hours after he texted Tracy Staines a full return to work letter from Concentra Urgent Care. In Nielsen's supporting documentation sent to the EEOC, Nielsen only attaches two doctor's notes (emergency room and Ridge Foot and Ankle Associates (Dr. Patel's office). They purposely omitted the full return to work letter from Concentra Urgent Care.

37. Because Frank Liu wanted to complain and informed Nielsen he was going to the EEOC, Nielsen HR and Tanner Tate prevented Frank Liu from working, and refused to accommodate 4 hours of walking a day restriction. Because Frank Liu typically works 7 days a week to hit 40 or more hours a week, in all actuality Nielsen did not need to accommodate Frank Liu at all. It is typical to drive 10-20 hours a week due to traffic especially while recruiting in both New York and New Jersey, and if Frank Liu goes door to door for 4 hours a week for 7 days that is 28 hours. Plus 10-20 hours of driving work, and weekly conference calls and admin time, Frank Liu could have easily hit at least 40 hours a week if he knew the doctor was specifically restricting him to walking 4 hours a day. Nielsen refused to let Frank Liu know that he was restricted to 4 hours of walking a day by Dr. Patel, even though Tania Rosello knew that since April 8, 2019 as internal email between Sedgwick and Tania Rosello at Nielsen

8

prove this.  The internal email between Maria Flores (Sedgwick) and Tania Rosello (Nielsen) was not known to Frank Liu until after he was already terminated as he requested to get those notes from Sedgwick much later.

38. Nielsen has accommodated people in the past due to medical issues.  After Frank Liu was terminated, he discovered Lauren Heard a membership representative was allowed to work part time due to stress.  Lauren Heard was classmate in the same training class for new hires as Frank Liu in 2016.

39. Frank Liu wanted to go back to work.  He was prevented from going to work by HR and management.  Initially he was allowed to work after his work injury, but after he wanted to complain about racism, discrimination and retaliation and made it clear to Nielsen human resources that he was thinking about going to the EEOC, Nielsen prohibited Frank Liu from working.  Nielsen would not accept the documentation from the emergency room, or the letter from Dr. Patel's office that allowed Frank Liu to go back to work with an Ankle brace.  Even though Tania Rosello knew Frank Liu was limited by Dr. Patel to 4 hours of walking a day, she still asked Frank Liu to find out how many hours he was allowed to walk which he received no answer.  Against Frank Liu's wishes Nielsen filed the workers compensation case in Nevada even though the work injury happened in the New York LPM market, and Frank Liu had not lived in Nevada since late 2016.  Sedgwick/Nielsen wrongfully denied Frank Liu's workers compensation case, in order to keep Frank Liu from working.  When Frank Liu finally got a full return to work letter with no restrictions from a third doctor's visit at Concentra Urgent Care, about 2 and a half hours after texting the letter to Tracy Staines (Vice President Human Resources), Frank Liu went on a conference call with Shannon Buggy (Senior VP HR) and Tracy Staines (VP HR), and on the call, Shannon Buggy terminated Frank Liu.

40. On the termination call on April 23 that took place at 5:30 PM EST, Frank Liu asked if they got his "Formal Complaint Against Tanner Tate" email.  Shannon Buggy finally acknowledged receiving it and stated they will look into it.  "Will" is future tense.  Neither Shannon Buggy nor Tracy Staines appeared to care about my email stating there was racism, discrimination and retaliation.  Shannon Buggy's behavior is contradictory to her email on April 2, 2019 stating she can connect with Frank Liu about his complaints after he was allowed to return to work.  This means Nielsen decided to fire Frank Liu and didn't want to hear his complaints after all.

41. Shannon Buggy offered Frank Liu 7 weeks severance pay to sign a general release waiver so he couldn't sue Nielsen.  Frank Liu refused.

9

42. During the termination call, Frank Liu inquired about the letter sent by Chris Gordon stating after April 22, 2019, if Frank Liu could not provide a full return to work letter, he would be placed on personal leave and could have a rental car for 30 days, and if he could still have the rental car. Shannon Buggy stated that was not the case anymore as now he was terminated and before he was just going to be placed on personal leave. It appears they decided to terminate Frank Liu after the letter was sent on April 18, 2019. The major thing that happened between April 18, 2019 and April 23, 2019 was Frank Liu sending a formal complaint against Tanner Tate email on April 20, 2019 informing Shannon Buggy, Nancy Philips and CEO David Kenny that Frank Liu was considering filing with the EEOC due to discrimination, retaliation and racism at Nielsen. All the facts add up, and Nielsen without a doubt retaliated against Frank Liu for wanting to file with EEOC after Nielsen management discriminated against Liu.

43. Nielsen's false reasons for terminating Frank Liu from their EEOC statement response was pretext to terminate Frank Liu who had complaints of racism, discrimination and retaliation and informed Nielsen he was considering going to the EEOC.

44. Even though Frank Liu was injured on the job and Nielsen prohibited Frank Liu from working, Shannon Buggy said they were going to use up Frank Liu's personal days, sick days and holidays to cover the days he was out of work.

45. The person who Nancy Philips ended up assigning to hear Frank Liu's complaints was Shannon Buggy. Shannon Buggy was the same person who terminated Frank Liu. Typically senior vice presidents of HR don't fire membership reps as membership reps are low on the corporate ladder. Nielsen used Frank Liu's sprained ankle against him and refused to accommodate anything to keep him from working after he mentioned he wanted to go to the EEOC for complaints. Nielsen lied to the EEOC in their response statement and omitted the fact he had a full return letter hours before he was terminated. Nielsen only showed the first two doctor's notes, but choose to omit the 3rd one from the record. In Frank Liu's employment records, which he requested from Nielsen after he was terminated, it appears Nielsen also fabricated a 2019 annual review as no 2019 annual review exists because a 2019 annual review would have taken place in 2020.

**Details about FSLA Violations**

46. Nielsen managers have violated their own company policies by telling employees not to sign up streaming-only homes. Upper management has also pushed against streaming only homes in

the sample.  By doing so and directing membership representatives to skip over eligible streaming only homes, it decreases membership representatives monthly bonuses as they bonus off of the number of homes they sign up. Frank Liu was discouraged by management from signing up streaming only homes.   Discriminatory practices against homes that stream who are otherwise eligible according to Nielsen's own policies lowers Frank Liu's monthly bonuses.  For other representatives who might not sign up as many homes, they endanger these other membership representatives to being put on performance improvement plans for not meeting their monthly target of homes signed. Another example is Kevin Kelleher told Frank Liu and several other membership representatives not to sign up streaming only homes.  Instead of terminating or demoting him, Kevin Kelleher is now the National Training Manager at Nielsen.

47. Nielsen management have told Frank Liu to not clock work done.  One manager told Frank Liu specifically to roll back his timecard.  Tanner Tate told Frank Liu not to clock a work related call. Frank Liu did report it to human resources.

48. Nielsen's Mobile Time Trak (MTT) system often has syncing issues and time clocked would not sync up or somehow end up with a 0 minute total time for activities. Nielsen needs to reimburse employees who have been underpaid due to their own system errors.

## Additional Discrimination Policies of the The Nielsen Company

49. Frank Liu along with all membership representatives were directed to discriminate against households based on race.  Nielsen has a system called TAR which each week would change and they would be criteria to sign up alternate homes.  Some weeks, the TAR would state NON-BLACK or NON-ASIAN or NON-HISPANIC meaning sign up any home that is not Black, or not Asian, or not Hispanic that matches the basic (first home's) type of TV reception.  He has seen NON-ASIAN show up on TAR several times.

50. Besides preventing certain races from signing up some weeks, Nielsen also makes membership representatives like Frank Liu offer compensation to homes based on their race in the New York LPM.  Nielsen has different gift charts payouts for different races (See **exhibits G and H**).  Some races are paid higher than others on the gift charts.  The lowest paid home over 2 years are Hispanic homes that speak only English or mostly English at home on the 2 year gift chart.  Black/African American homes are paid less than Asian homes.  There is also a race/age calculator app that Nielsen gives out to membership representatives to ensure they offer the right gift chart to the household.

11

Membership representatives can also offer extra gift cards to households to sign up based on their race or age.

51. Although Nielsen might argue that some races are underrepresented and need extra compensation to sign up, the compensation gift charts for LPM markets is determined by race/age and is the same across the nation and not by how underrepresented a given race/age is in the specific market, and it does not matter what the existing sample consists of.  While Frank Liu has signed up a lot of homes for Nielsen, this policy has always troubled Frank Liu.

## Causes of Actions

**Discrimination through Disparate Treatment (Count 1)**

52. Nielsen violated <u>Title 7 of the Civil Rights Act</u> and <u>New York State Human Rights Law</u> throughout Liu's employment at Nielsen.  Liu was targeted with Asian homes throughout his employment.  Managers sent Liu to recruit Asian areas because Liu was also Asian. Sample managers would look at census statistics and if it was identified as an Asian area, they would assign these "specs" to Liu. If another rep encountered an Asian "basic" that did not speak English, they would contact the manager and have the work reassigned to Liu. The problem with this policy is while Liu can speak English fluently and Mandarin at a moderate level, Liu can not speak Cantonese, Korean, Vietnamese, Japanese or any other languages. Liu can not communicate with a Cantonese, Korean, Vietnamese or Japanese language home any better than non-Asian membership representative could as Liu does not speak Cantonese, Korean, Vietnamese or Japanese. If Liu was unsuccessful at recruiting the Asian home that management targeted Liu with, Liu would be penalized for not signing up the home due to Nielsen's system of initial basic rate (IBR) system which affects Liu's monthly bonuses and recruitment metrics.

53. When Liu brought up that he did not want to be targeted with Asian homes, management Informed Liu that since Liu was receiving a language pay incentive for speaking Mandarin, it was allowed. Nielsen's disparate impact policy of targeting Liu with Asian "specs" because he was Asian

and then penalizing Liu if he could not sign up the homes troubled Liu so much that Liu tried to get his

language incentive removed so Nielsen would stop targeting Liu with Asian homes.


**Discrimination (Count 2)**

54. Nielsen violated further <u>Title 7 of the Civil Rights Act</u> and <u>New York State Human Rights</u>

<u>Law</u>.  Frank Liu was told not to talk during a conference call by his manager Tanner Tate on February

20, 2019 when he was working in the greater NY Metropolitan area which was Nielsen's "NY LPM"

TV ratings market. Later that day, Tate phoned Liu and told Liu "don't be a chink" after Liu

complained about how he was treated on the call. Tate's racist behavior caused Liu not to speak

anymore on future conference calls unless a verbal response was required. Instead of speaking on

conference calls, Liu would use the conference call chatroom to communicate through typing. By

March 2019, Tate's active SWAT Membership Representative team was comprised of only white

females with exception to Liu who is a Chinese American male. On March 5, 2019, a white SWAT

membership representative named J Tracy Booth sent the team texts which Liu perceived as racist and

directed at Liu.  After Tanner Tate (who is white like J Tracy Booth) failed to address the behavior, Liu

escalated the matter by sending screenshots of the text messages to other managers. Tate called Liu the

next day and tried to defend Booth's actions by stating he didn't think she had "malicious intent there

or she meant it that way."

55. Liu suffered adverse action during Liu's annual summary on March 20, 2019. Tate criticized

Liu about his engagement in conference calls even though Liu was an active participant on conference

calls before the February 20 racist incident. Tate graded Liu "inconsistent contributor" during the

meeting with Tate in spite of Liu having the most signs ups on his team and had the 5th most signs

nationwide for the evaluation period. Booth and other SWAT membership representatives on the SWAT

team received higher evaluations.

13

56. According to Nielsen, Tate took control of the SWAT team in or around September of 2018. Previously Liu was managed by Luke Berglin where Liu was graded "Highly Successful Contribution" by Berglin. On January 27, 2019 (less than 30 days before Tate's racist slur, and less than 60 days before Liu's meeting with Tate), Tate awarded Liu with a Simply Excellent Award and praised Liu for being a valued member of the team on Nielsen's Google+ social media.

**Retaliation (Count 1)**

57. Liu engaged in activity protected covered under Title 7 of the Civil Rights Act and New York State Human Rights Law by informing Nielsen human resources he was thinking about going to the EEOC. Nancy Philips (CHRO) had sent Shannon Buggy (SVP Global Human Resources) to handle Liu's complaints. Both Philips and Liu were aware of Liu's protected activity. Buggy retaliated against Liu's protected activity by terminating Liu.  Tracy Staines was also on the call when Liu was terminated on April 23, 2019.  It is highly unlikely Liu would have ever had contact with Buggy or Staines and suffered the adverse actions from Buggy had he not engaged in protected activity.

**Retaliation (Count 2) / Disability Discrimination**

58. Nielsen violated the Americans with Disabilities Act of 1990 (ADA) when they refused to accommodate Liu's temporary disability after a work injury. As a large employer, Nielsen is subject to the ADA. After a work related injury where Liu sprained his ankle, on April 1, Nielsen prevented Liu from working even though Liu wanted to continue working. Furthermore, Nielsen refused to accommodate Liu to allow him to work even though a doctor's note allowed Liu to go back to work with an ankle brace. Nielsen forbid Liu from doing any work even if it didn't have anything to do with walking. By preventing Liu from working at all even if it didn't have to relate to walking, Nielsen was

in effect treating Liu as if he had a physical impairment that limits one or more life activities, and was treating Liu as if he was an employee unable to work.

59. Nielsen's workers compensation ambassador Tania Rosello found out that Dr. Patel was limiting Liu to walking up to 4 hours a day but there was no restriction on driving. Due to the nature of the job in the NY LPM Market which includes drive time (including traffic), admin time, door-to-door recruiting, in-home interviews, phone calls, Liu might not have had to walk 4 hours a day anyway. Liu typically worked 7 days a week to hit the 40 hours minimum required for the job. Nielsen treated Liu as if he had a disability by preventing him from working and did not try to accommodate Liu to being able to return to work.  Preventing Liu from going back to work may have been a retaliatory action due to Liu's protected activity of wanting to go to HR about complaints of discrimination.

60. Liu desperately wanted to get a 100% return to work letter as he believed that was the only way he could return to work and sought an appointment with another doctor. However, Nielsen and Sedgwick Claims Services denied Liu's workers compensation case so Liu was unable to see another doctor to attempt to get a return to work letter that had no restrictions. Liu contested his denial, and pointed out that he signed the original C4 for workers compensation "under duress" as he had never consented to have the worker's compensation case filed in Nevada.  Liu had not lived in Nevada for some time as he transferred out of Nevada and Nielsen Human Resources was aware of this.  Sedgwick reluctantly opened his case in New Jersey where the work injury happened.  Liu was working in both New York and New Jersey as parts of New Jersey (eg. Newark) was part of the NY LPM TV market. Liu was able to see a doctor, and on April 23, 2019, Liu was able to get a full return to work letter. At 2:58 PM EST Liu texted the full return to work letter to Tracy Staines (VP HR) for review. Liu still needed Nielsen to review the letter and grant permission to return back to work.

61. Staines responded back to Liu's text by requested a call at 5:30 PM. At around 5:30 PM,

Liu had a call with Shannon Buggy (SVP HR) and Staines. Buggy terminated Liu in the call. Staines was present during the duration of the call. Liu believes preventing Liu from working was a way for Nielsen to retaliate against Liu after he had contacted HR about discrimination and retaliation.  After Liu was terminated, Liu did find a history of racist tweets from Tanner Tate (See **Exhibit I**)

**Cause of action for Wage Issues in Violation of FSLA**

62. Nielsen has violated the <u>Wages and the Fair Labor Standards Act (FSLA)</u>.  Management telling Liu to roll back his time card or not clock time worked is a violation of law and can be considered the "continuing violation doctrine." In May of 2016, Hang Duan (Nielsen sales manager) told Liu to roll back his timecard. Tanner Tate told Liu not to clock work done in 2019. Furthermore, Nielsen's "nTime" and "Mobile Time Track" system has issues and results in work time not being recorded properly so Liu missed out on being paid on time worked.  It is Plaintiff's belief that Nielsen upper management was aware of timecard issues where the nTime wouldn't sync and this affected Liu and a lot of other membership reps.

**Statute of Limitations is Still Valid**

63. There are numerous factors that show this Complaint is filed within statute of limitations and is not time barred.

**NYHR Law and Governor Cuomo's COVID-19 Executive Orders tolling Statute of Limitations**

64. Under the New York City Human Rights Law, employees have three years to file a claim under the Human Rights Law.

65. During the COVID-19 pandemic, former Governor Cuomo signed an executive order tolling the statute of limitations for 228 days under Executive Order 202.8.  The decision in *McLaughlin v.*

16

*Snowlift, Inc.*, 2021-05769, ___ *A.D.3d* ___ *[2d Dep't Mar. 8, 2023], held that the Se*cond Department unequivocally stated that its decision in Brash v. Richards conclusively "held that the executive orders 'constitute a toll' of the filing deadlines applicable to litigation in New York Courts."

66. Statute of limitations was once again tolled again in former Governor Cuomos's Executive Order 202.67 which provided even further tolling.

67. Three years and 228 days equates to 1323 days.  This doesn't even factor in Executive Order 202.67 which added more tolling.  From when Liu was terminated to from when the original Complaint was first submitted to Southern District of New York is less than 1323 days therefore Liu can proceed under New York State Human Rights Law and the SDNY federal court is the proper court due to diversity.  Liu did work for Nielsen in the New York in 2019 and before then as well.  Nielsen assigned Liu a number of homes to recruit in New York City (See Exhibit C).

**Equitable Tolling**

68. The 90 day right to sue letter appears to have been issued on June 25, 2021.  I was out of the Country until September of 2021.  I left the Country in June of 2019.  I returned back to the US in September of 2021.  I am sure people remember the Covid pandemic.  Before I returned to the USA, I needed to get a covid-19 test as that was a requirement to enter the USA in September of 2021.  Covid-19 was a real thing that impacted a lot of people.

69. There is authority in this circuit for the proposition that a plaintiff may defeat a time bar to a Title VII civil suit by asserting subsequent identifiable acts of discrimination related to a time barred incident. Egelston v. State University College at Geneseo, supra, at 755; Noble v. University of Rochester, 535 F.2d 756, 757-58 (2d Cir. 1976); Weise v. Syracuse University, 522 F.2d 397, 410 n. 20 (2d Cir. 1975).

70. Tolling might be appropriate where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum. See Burnett v. N.Y. Central R.R. Co., 380 U.S. 424, 429, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). See also Johnson v. Railway Express Agency, 421 U.S. 454, 468 n. 14, 95 S.Ct.

71. However, the 90-day limit on filing suit after receipt of the right to sue letter is subject to equitable tolling in appropriate circumstances. For equitable tolling to apply, a plaintiff must show (1) excusable ignorance of or non-compliance with the limitations period, with no prejudice to defendant, or (2) affirmative misconduct of defendant that lulled the plaintiff into inaction. Payne v. Cook County Hospital, 719 F. Supp. 730, 732 (N.D. Ill., 1989).   Please see **Exhibit R** for the for the original Complaint filed in the Northern District of California which includes the EEOC right to sue letter.

**Estoppel and Promissory Estoppel**

72. I have claims about this as it relates to Dkt 6 and 6.1.  There are emails that the Court has not seen.  I can't put it in the Amended Complaint or go into depth but estoppel and promissory estoppel is a factor that led me not to file an appeal to the 9th Circuit as it relates to the Northern California lawsuit.

**EEOC deceived by Nielsen about records location**

73. When the EEOC complaint was submitted, I had the Tampa Field Office start the claim as they had a faster phone interview and I was overseas in China, and I had issues getting phone calls while overseas.  A phone interview was needed to start the EEOC process.  I understood that the Tampa Field Office could transfer the case over to the New York field office once it was started.  The New York field office has issues with getting the phone interview as availability was not good and I needed to get EEOC claims in as there is only a limited amount of time to do that.

18

74. Once the Tampa Field Office had the case, they refused to transfer the case to NY because Nielsen misled them that the employee records were stored in Tampa field office jurisdiction.  This was untrue as later found out after the EEOC was done with the claim and a lawsuit was filed in the Northern District of California.

75. See Attached **Exhibit K** for full email from EEOC investigator stating "employee records for Nielsen are housed in their office in Oldsmar, Florida, Tampa Field Office Jurisdiction":

> The decision to retain the charge in Tampa once the ADR Coordinator returned it back to Enforcement was made based on the fact that the Human Resources Dept and the employee records for Nielsen are housed in their office in Oldsmar, Florida, Tampa Field Office Jurisdiction.

76. See Attached **Exhibit L** sent by Cardelle Spangler regarding "CMS Update"

> Also, I should let you know that after doing more research, we believe the proper venue for this matter is the U.S. District Court for the Middle District of Florida.  This is because the majority of the witnesses and documents are located there.  For purposes of the motion, I do need to ask if you consent to or object to the transfer.  Based upon our previous conversations, I suspect you will still object, but I still need to ask.  Thank you.

77. See Attached **Exhibit M** from Declaration of Anita Pancholi who was the General Council for Global Employment for The Nielsen Company (US) LLC that is dated 1/3/2023 (which is well after the alleged expiration of the 90 day right) to sue that states employment records are stored electronically on a server in the Netherlands.

> 4.   The Nielsen Co. (US), LLC maintains employee personnel records, including those of Plaintiff Frank Liu ("Plaintiff"), electronically on a server located in the Netherlands. Records relating to Plaintiff's employment have never been maintained physically or electronically in the Northern District of California.

78. Nielsen's actions of misleading the Tampa Field Office was a contributing factor of why this lawsuit was not originally brought in Southern District of New York as if the EEOC case was investigated in New York field office, then it would have been clear to me that it was the proper place to file the lawsuit.  I wanted the EEOC case transferred to New York jurisdiction (See **Exhibit N**), but EEOC Tampa Field Office refused.  I even tried to file another case in New York, but it was closed as the Tampa Field Office was investigating the same claim and you can't file the same claim in two places at once.

79. When I first filed my lawsuit, I filed it in Northern District of California as I was sent to work out there.  I did not wish to file it in Florida as I have never been a resident of Florida.  I was terminated in New Jersey, after checking out of a hotel in New York as I had been assigned work in New York and New Jersey and was staying in New York prior to being terminated.

80. Had Nielsen not deceived EEOC Tampa Field Office, the EEOC complaint would have been transferred over to NY Field Office and most likely would have been cross filed with New York Human Rights Division.

81. The doctrine of equitable tolling has limited application. The Supreme Court has recognized equitable tolling only "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2D 435 (1990); *see Weick v. O'Keefe,* 26 F.3d 467, 470 (4th Cir.1994) (equitable tolling warranted where employer "lulled [claimant] into inaction"); *Olson v. Mobil Oil Corp.,* 904 F.2d 198, 201 (4th Cir. 1990) (no equitable tolling where employee "possessed the information needed to file a timely discrimination charge"); *English v. Pabst Brewing Co.,* 828 F.2d 1047, 1049 (4th Cir.1987) (equitable tolling warranted where employer "has wrongfully deceived or misled the plaintiff"), *cert. Denied,* 486 U.S. 1044, 108 S. Ct. 2037, 100 L. Ed. 2d 621 (1988).

**Tolling of Statute of Limitations**

82. On March 20, 2020, at the outset of the COVID-19 pandemic, then-governor Andrew Cuomo issued Executive Order No. 202.8, declaring that "any specific time limit for the commencement, filing or service of any legal action, notice, motion… is hereby tolled," until April 19, 2020. Cuomo subsequently issued nine executive orders that extended the tolling or suspension of statutes of limitation and filing periods under New York law.  When the EEOC issued their right to sue letter, they issued it to me electronically.  The Tampa Field Office knew I was overseas when they issued the right to sue letter.  See **Exhibit O** as an example that they knew I was not in the USA.

83. Both the Appellate Division, Second Department in Brash v. Richards, 195 A.D.3d 582 (2d Dept. 2021) and the Third Department in Roach v. Cornell University, 207 A.D.3d 931 (3d Dept. 2022), have ruled that Executive Order No. 202.8 and the series of executive orders that followed it operated to toll statutes of limitation and other filing periods.  In addition, please see **Exhibit P** regarding an email I sent EEOC letting EEOC know about my disappointment.  I had previously informed someone at the EEOC Tampa Field office that I disagreed with the date range of the violations as the initial EEOC charge listed 4-23-2019 as the start date.

84. Governor Andrew Cuomo signed executive Order 202.67 which further tolled "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the procedural laws of the state" from October 4, to November 3. This tolling period has been in effect since March 20, 2020 when Governor Cuomo signed Executive Order 202.8.

85. In Brash v Richards (195 A.D.3d 582 [2d Dept 2021]), the Appellate Division, Second Department, found that the extensions mandated by ex-Governor Cuomo's executive orders acted as a "toll" on all CLPR limitations periods which were not lifted until the last extension expired on November 3, 2020 filing in court after receiving the right-to-sue letter is not jurisdictional, so it is possible that equitable arguments may persuade a court that it is appropriate to file the lawsuit late.

**Defendants' Gas lighting "single cause of action"**

86. For my original Complaint filed in the Northern District of California, it was my first time filing a lawsuit and it was clear that there was a "Wage Issues" section, "First Claim for Relief" section and "Additional Claim for Relief" section.  The is more about a "single cause of action."  After submitted the lawsuit, I did not amend the Complaint as Defendants sent in three separate motions to dismiss based on lack of personal jurisdiction so amending the complaint was unnecessary.  In addition,

I did argue that it wasn't about a single cause of action in my answer to Defendants' Second Amended Motion to Dismiss.

87. When I was refiling the lawsuit in SDNY, I did not change the Complaint as I wanted it to be the same as the Northern District of California lawsuit as it was a refile.  In addition, I did not want to add more details in the Complaint because there were things Defendants were doing during {redacted} that I feared they would find the lawsuit somehow and keep on changing their terms trying to force me to {redacted}.

88. However, since I had a feeling defendants would keep gas lighting me that my Complaint was "single cause of action," in my SDNY lawsuit, I summed up my Complaint by stating at the very beginning of the SDNY lawsuit:

### Complaint

I am making it clear that this Pro Se plaintiff who is not a lawyer is suing for: employment discrimination, retaliation, wrongful termination, wage issues, and refusing to accommodate for temporary disability.

89. Furthermore, on page 36 of my original Complaint filed in the Southern District of New York, there is the "Order Granting Motion to Dismiss" signed by Judge Jeffrey S. White of the US District Court for the Northern District of California, where it even agrees that the lawsuit that was filed (case #21-CV-07313-JSW) was filed by the plaintiff "alleging discrimination and retaliation." The Judge's Order is attached as **Exhibit Q**.  Here is a screenshot of the Court Order:

| | |
|---|---|
| 19 | **BACKGROUND** |
| 20 | After returning to live in California after several years abroad, on September 20, 2021, |
| 21 | Plaintiff Frank Liu ("Plaintiff"), proceeding *in forma pauperis*, filed this suit alleging |
| 22 | discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and Title I |
| 23 | of the Civil Rights Act of 1991.  42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981a against his former |
| 24 | employer.  Plaintiff alleged that Defendant discriminated against him by suspending and then |
| 25 | terminating his employment as a result of his "thinking about filing a case with the EEOC back in |
| 26 | March to April of 2019 and had complaints about racism to report."  (Complaint at 1.) |

90. Perhaps Defendants disagrees with the Judge in Northern California Case.  Perhaps Defendants know the Complaint better than the Pro Se plaintiff.  I guess it wasn't clear enough in my Complaint filed in the Southern District of New York where I even stated "I am making it clear" that it is about more than a single cause of action.  I really don't know how much clearer Defendants want me to make it that the lawsuit is about discrimination and other things as well.  It is NOT single cause of action.  I am not a lawyer.  I am a pro se litigant.  I hope this Court agrees with the Supreme Court in finding that pro se pleadings should be held to "less stringent standards" than those drafted by attorneys *(Haines v. Kerner, 404 U.S. 520 (1971)).*

**Nielsen Deceit**

91. This lawsuit is now brought in the correct forum.  Had Defendants not lied to the EEOC and told them employment records were stored in Tampa Field Office Jurisdiction when it is obviously not based on declaration of Anita Pancholi, then the Tampa Field Office would have transferred it to New York and it would have been cross filed in New York with NY Human Rights Division.

92. Had the EEOC of NY and/or NY Human Rights Division investigated the original case, then there is a good chance I may have filed my original lawsuit in NY instead of California. I certainly was not going to file my lawsuit in a Florida court as I disagreed with EEOC Tampa keeping the case instead of transferring it.  Nielsen's deception is not OK.

93. Another example of Nielsen's deception is that they put my 2019 W2 in some place in Connecticut and the previous years W2 was NY HQ.  Why would they put my 2019 W2 under CT where I was never employed in CT by Nielsen?  Perhaps they did that to hide where they were headquartered or so to stop any EEOC case from transferring to New York.  Surely there is a reason why my W2 lists CT when I had no prior clue that CT address existed.

23



94. Prior years listed NY location, but 2019 lists some address in CT.  Why is this?  Trying to trick me?



**Continuing Wrong Doctrine**

95. The "continuing wrong" doctrine is an exception to the general rule that is usually employed "where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act" (Henry v. Bank of Am.).  Nielsen has violated New York General Obligations Law Section 5-336 (both section A and section B) most recently in October of 2022.  Plaintiff can't get more into details about this right now due to Defendants' motion to seal Docket 6 and 6.1.

24

**Should the Case not Stay in New York, Plaintiff Requests the Case be Transferred to District of Delaware instead of Dismissed**

96. The Nielsen Company (US) LLC is incorporated in Delaware.  Should the Court determine the statute of limitations have elapsed in the New York lawsuit, then Plaintiff requests the Court to transfer the case to the United States District Court for the District of Delaware.  Del. Code Ann. Tit. 10 § 8118 also known as "the Savings Statute," codified in Title 10, section 8118(a) of the Delaware Code, provides a one-year grace period to commence a new action in Delaware after prior litigation ends without a resolution on the merits.

97. Delaware's savings statute—10 Del. C. § 8118(a)—protects claims from being time-barred where they were timely brought in an incorrect forum (Skye Mineral Invs., LLC v. DXS Capital (U.S.) Ltd., C.A. No. 2018-0059-JRS (Del. Ch. July 28, 2021))

98. While it does not appear New York's CPLR 205(A) allows cases to be brought within 6 months when the original case was brought incorrectly based on lack of personal jurisdiction, which is a mistake that many Pro Se plaintiffs including Liu has made when filing in the wrong state, Delaware's savings law provides such language allowing cases to proceed.  The notion that if a Pro Se plaintiff files a EEOC 90 day right to sue lawsuit in the wrong state, and gets their case forever dismissed is not equality because it may take months for the US Marshals to serve a lawsuit (as is the case here).  And since the US Marshals may like to serve things by mail (as it appears to be the case here) because Defendants get 60 days to respond.

99. The fact of the matter is the original lawsuit filed in Northern District of California was timely within the 90 days right to sue.  Pro Se is a right as not everyone can get lawyers.  Thankfully Delaware has language that addresses wrong forum.  Plaintiff would like the case to remain in SDNY, but if the Court determines SDNY can not proceed with the claim, instead of dismissal, Plaintiff asks the Court transfer it to US District Court in Delaware where Nielsen is incorporated.  This is allowed

25

under 28 USC §§ 1404 and it would probably be more convenient for parties as Nielsen can't further delay the proceedings as they knew about the lawsuit long before the Marshals even served them. Dismissal instead of transfer would be prejudicial because when Liu refiles his lawsuit in Delaware, the summons would likely be transferred to the US Marshals of this Court to serve as Delaware Court's US Marshals would be farther away, so most likely they would just transfer the summons for the local SDNY Marshals to serve.  When the case was filed in Northern District of California, the Marshals Service in NY did the serving, and US Marshal in California did not fly to serve Nielsen in New York. And even if the SDNY Marshals end up serving it, there is also delay due to the fact that service may take a while due to SDNY US Marshal workload, and thus it may take a while as they are backed up with other cases to serve.  And then if the SDNY Marshals might serve by mail again, then Defendants would have another 60 days to answer.  This process of dismissal and needing to refile would be a round about way that delays justice and is inconvenient, so instead of dismissal, Plaintiff asks the Court to transfer it to SDNY if this Court decides that this case can not proceed in SDNY based on Plaintiff's other arguments trying to keep the case here.  Plaintiff would prefer the case stay here in SDNY, but if it can't, instead of dismissal, Plaintiff requests transfer to Delaware.


### Regarding Amended Complaint

I am submitting this Amended Complaint in good faith as under Honorable Judge Rearden's Standing Order as it relates to Pro Se, they have 4 weeks to respond to motions.  I am responding to Defendant's Motion to Dismiss by filing an amended complaint.  Yesterday was June 19, 2023 and that was Juneteenth federal holiday so it would make things due the day after which is today.  I am submitting this Amended Complaint to temporary_Pro_Se_Filing@nysd.uscourts.gov before midnight June 20, 2023 which would make it on time within the 4 weeks (and taking in account for the federal holiday).  I am rushed on completing this Amended Complaint and I did submit a motion letter (dkt.

26

43) which I did ask for an extension, but so far the Court has not given a reply to that.  I do not want my amended complaint to be late and my case dismissed because of this, so need to submit this amended complaint.  I apologize if it looks or reads a bit rushed.

**Jury Trial Demand**

100. The Plaintiff requests a jury trial on all questions of fact raised by its Complaint.

**Prayer for Relief**

101. Wherefore, the plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which retaliates against employees who complain about discrimination;

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who exercise their federally protected rights to complain about discrimination and which eradicate the effects of its past unlawful employment practices;

C. Order Defendant to make whole Frank Liu by providing appropriate back pay with prejudgment interest, and other affirmative and equitable relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, rightful-place reinstatement or front pay;

D. Order Defendant to make whole Frank Liu by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and medical expenses;

E. Order Defendant to make whole Frank Liu by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation;

F. Order Defendant to pay Frank Liu punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

G. Order Defendant to provide training to its officers, managers and employees regarding discriminatory harassment and retaliation in the workplace;

H. Grant such further relief as the Court deems necessary and proper in the public interest; and

I. Award the plaintiff the costs in this action

Respectfully submitted,

Dated 6/20/2023                    Frank Liu

Pro Se Plaintiff