1   Frank Liu

2   304 S. Jones Blvd #3416

3   Las Vegas, NV 89107

4   818-835-0498

5   frank.liu.96@gmail.com

6   Pro Se Plaintiff

7

8

9           **IN THE UNITED STATES DISTRICT COURT**

10         **FOR THE SOUTHERN DISTRICT OF NEW YORK**

11

| Frank Liu | Case #1:22-cv-09084-JHR-OTW |
|---|---|
| Plaintiff, | |
| | **Plaintiff's Response in Opposition to** |
| vs. | **Defendants' Motion Letter to Stay Discovery** |
| | **(ECF 55)** |
| The Nielsen Company (US) LLC | |
| and | |
| TNC US HOLDINGS | |
| Defendants. | |

12

13

14

15

16

17

18

19

20

1

## TABLE OF AUTHORITIES

S.K.Y. Mgmt. L.L.C. v. Greenshoe, Ltd., No. 06-21722-CIV, 2007 WL 201258, at *1 (S.D. Fla. Jan. 24, 2007…………………………………………………………………………7

Hollins v. United States Tennis Ass'n., 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006)………...14

Computer Assocs. Int'l, Inc. v. Simple.com, Inc., 247 F.R.D. 63, 69 (E.D.N.Y. 2007)…..14

Rule 26(c)……………………………………………………………………………5, 19

Kron Med. Corp. v. Groth, 119 F.R.D 636, 637 (M.D.N.C. 1988)……………………...19

Perry v. City of Pontiac, 254 F.R.D. 309, 312 (E.D. Mich. 2008)………………………..19

Gulf Oil Co. v. Bernard, 452 U.S. 89, 101–02 n.16 (1981)………………………………19

Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990)………………………19

United States v. Microsoft Corp., 165 F.3d 952, 960 (D.C. Cir. 1999)……………………19

Marrese v. American Acad. of Orthopaedic Surgeons, 726 F.2d 1150, 1159
(7th Cir. 1984) …………………………………………………………………………...19

In re PE Corp. Sec. Litig., 221 F.R.D. 20, 27 (D. Conn. 2003)……………………………19

Turner Broadcasting System, 3 Case 2:10-cv-14155-DPH-MKM Document 27 Filed
02/16/11 Page 10 of 24…………………………………………………………………20

Inc. v. Tracinda Corp., 175 F.R.D. 554, 556 (D. Nev. 1997)………………………………20

2 Heartland Jockey Club Ltd. v. Penn Nat'l Gaming, No. 2:09-cv-804, 2009 WL 5171829,
at *4 (S.D. Ohio Dec. 21, 2009…………………………………………………………..20

Hoxie v. Livingston County, No. 09-CV-10725, 2010 WL 822401, at *1 (E.D. Mich. March
4, 2010)…………………………………………………………………………………20

1

<u>TABLE OF CONTENTS</u>

2   INTRODUCTION………………………………………………………………4

3   The Court Should Not Peek into Defendants' Motion to Dismiss (ECF 54)………………4

4   Balancing Test……………………………………………………………………...6

5   Staying Discovery Will Further Prejudice Plaintiff………………………………………8

6   Defendants' Delay has caused Stress to Plaintiff…………………………………………...10

7   Choosing the Right Test…………………………………………………………13

8   Defendants Failed to Establish Good Cause to Stay Discovery……………………………14

9   Nielsen Racists Coming Out Online Over Layoffs………………………………………16

10  FURTHER ANALYSIS……………………………………………………...………18

11  Defendants Could Have Filed a Motion to Stay Discovery in October 2023……………21

12  Defendants Decline to Provide Sedgwick NJ Files Only Because They Don't Want To…21

13  CONCLUSION………………………………………………………………………23

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MEMORANDUM IN OPPOSITION TO MOTION TO STAY DISCOVERY**

2

3    **INTRODUCTION**

4        Defendants have refused discovery since the case began and their actions not only

5    have delayed the case from proceeding further (eg. waiting 7 months to file their motion to

6    stay [ECF 55] and motion to dismiss[ECF 54]), Nielsen have been and still are laying off

7    witnesses and outsourcing the work overseas as they look to increase EBITA after a

8    leveraged buyout from private equity back in 2022.  Defendants refusing to provide

9    discovery has already prejudiced Plaintiff.  In the interest of justice, preserving evidence

10   and witnesses, Plaintiff respectfully request that the court <u>deny</u> Defendants' Motion to Stay

11   Discovery and allow the discovery process to proceed without further delay or

12   gamesmanship from Defendants.

13

14       **The Court Should Not Peek into Defendants' Motion to Dismiss (ECF 54)**

15       Since Defendants wrote a <u>motion letter</u> addressed to Judge Wang, it would appear

16   they are asking Judge Wang to decide on the motion to stay discovery (ECF 55).  In their

17   letter, they asked the Court to "make a preliminary assessment" of Defendants' motion to

18   dismiss.

19       *First*, <u>Defendants' Motion to Dismiss has been filed as of today, and the Court now has the ability

     to make a preliminary assessment of the Motion's strength.</u> If the Court grants Defendants' Motion to

20

21       **Firstly**, Defendants **<u>DO NOT</u>** consent to a magistrate judge's jurisdiction.  Because

22   Defendants do not consent to Judge Wang deciding on dispositive motions (eg. motion to

23   dismiss), Plaintiff believes Hon. Judge Wang <u>should not</u> "make a preliminary assessment"

24   into Defendants' motion to dismiss because Judge Wang <u>will not</u> be the judge who decides

25   on Defendants' motion to dismiss.  It would be another story if Defendants had agreed to a

26   magistrate judge's jurisdiction, but this isn't the case here.

27       **Secondly**, because Defendants do not consent to a magistrate judge's jurisdiction,

28   this Court should use a <u>balancing of factors test</u> instead of the preliminary peek approach.

1   Since Judge Wang does not have Defendants' consent to decide on dispositive motions, it

2   would be potentially problematic to have her "prejudge" the motion to dismiss when

3   deciding whether or not to grant a motion to stay discovery.

4        A magistrate may deem a motion to dismiss to be without merit, and therefore allow

5   discovery to proceed.  On the other hand, a magistrate judge may deem a motion to dismiss

6   likely to succeed, and therefore stay discovery even though it presents a significant risk of

7   spoliation of evidence or would not impose any extraordinary burden on the parties.

8   However, the magistrate's views on the motion to dismiss may differ from the district

9   judge's views who has the ultimate say on Defendants' motion to dismiss.  Some magistrate

10  judges explicitly disclaim prejudging motions to dismiss when they decide motions to stay

11  discovery which Plaintiff believes is sound logic.  Additional burden and error are

12  introduced when different judges decide the motion to stay discovery and the motion to

13  dismiss.  Due to this factor, Plaintiff believes Judge Wang should only apply a balancing

14  test instead of a preliminary assessment to Defendants 6 month late motion to dismiss.

15  Furthermore, Plaintiff has already filed his Motion to Strike Defendants' motion to dismiss

16  and that puts another uncertain factor into this.

17       Rule 1 of the Federal Rules of Civil Procedure directs that the Rules "should be

18  construed and administered to secure the just, speedy, and inexpensive determination of

19  every action and proceeding.  A speedy determination would ordinarily involve moving

20  quickly to discovery so that the ultimate resolution of the case would not be delayed if the

21  motion to dismiss were denied, at least in part.  The Rules and appellate decisions make

22  clear this issue is left to the discretion of judges at the trial level.  In exercising this

23  discretion, courts might automatically stay discovery when a motion to dismiss is pending,

24  never stay discovery in that circumstance (or disfavor it), or apply some kind of balancing

25  test to weigh the competing interests and the potential harms due to delay or due to

26  unnecessary discovery.

27       Courts have read the language of Rule 26(c) as enabling them to issue orders staying

28  discovery upon a showing of "good cause" by the moving party or parties.  Courts have

1  stated that the mere filing of a motion to dismiss, standing alone, is not sufficient grounds

2  for staying discovery.  Defendants do not have qualified immunity and Plaintiff's lawsuit

3  isn't complex such as shareholder derivative suits.

4

5  <div align="center">**Balancing Test**</div>

6       Due to Defendants refusing consent to a magistrate judge's jurisdiction, Plaintiff

7  believes the Court should rely on only a balancing test for this lawsuit as outlined below:

8  (1) the interest of the plaintiff in proceeding expeditiously with the civil action as balanced

9  against the prejudice to plaintiffs if a delay; (2) the burden on defendants; (3) the

10  convenience of the court; (4) the interests of persons not parties to the civil litigation; and

11  (5) the public interest.

12

13       a) Interest of the Plaintiff

14       Prejudice to plaintiff might result if there is a risk that evidence will be spoiled

15  during any delay, particularly if the case involves significant witness testimony.  Here,

16  Nielsen has been and still is continuing layoffs as it seeks to increase EBITA.

17       b) burden on defendants

18       Plaintiff has only asked for his New Jersey Workers' Compensation files.  Nielsen

19  owns those files.  Nielsen hires Sedgwick to decide on claims.  Nielsen could easily order

20  Sedgwick to release those files.  Sedgwick can not release those files to Plaintiff unless

21  there is a subpoena or permission from their client.  There is absolutely no burden

22  whatsoever on Defendants to release Plaintiff's workers compensation files to him.  The

23  only burden is the files will prove Defendants lied to the EEOC because Plaintiff has stated

24  all along he texted Tracy Staines his full return to work letter before he was terminated.

25  Nielsen has always denied that.  The workers' compensation files are key evidence.

26       Furthermore, Defendants have not demonstrated any extraordinary burden to stay the

27  case.  Nielsen cannot rely on a generic assertion that discovery will be burdensome, because

28  discovery is always at least somewhat burdensome in nature.  Instead, Defendants must

1   show that the case is unusually complex, discovery will be unusually extensive, or

2   something along those lines.  S.K.Y. Mgmt. L.L.C. v. Greenshoe, Ltd., No. 06-21722-CIV,

3   2007 WL 201258, at *1 (S.D. Fla. Jan. 24, 2007) (distinguishing from other cases where

4   there was a risk of "needless and extensive discovery").

5         C) the convenience of the court

6         Should discovery proceed, Defendants should be forced to release the New Jersey

7   Workers' Compensation files to Plaintiff.  Plaintiff will not be conducting burdensome

8   discovery because he is a pro se party with limited resources.  Plaintiff is litigating this

9   lawsuit as a pro se party and is looking for essential documents to prove his lawsuit.

10   Plaintiff has only asked for the Sedgwick New Jersey Workers' Compensation files so far

11   which are critical to Liu's lawsuit (**See Exhibit A**) to read Nielsen's EEOC position

12   statement.

13         D) the interests of persons not parties to the civil litigation

14         When witnesses work for Nielsen, it is easier for them to comply with depositions

15   and interrogatories.  However, once they are laid off, they are less likely to cooperate, or

16   just don't want anything to do with Nielsen or to think about their former employer.  It is in

17   the interest of witnesses who still work at Nielsen to think about Nielsen maters when they

18   are still being paid a salary by Nielsen.  After they are laid off, they have other things to

19   worry about such as finding a job, or surviving.  Due to Nielsen's ruthless quest to

20   outsource jobs to cut costs, it it important to proceed to discovery before witnesses are lost

21   after Nielsen terminates them.  These witnesses might even be bitter at Nielsen because

22   previously, Nielsen employees got 2 weeks severance per year of employment, and this has

23   since been cut down to 1 week per year of service for those employees who made less than

24   200K a year.

25

26

27

28

1    E) the public interest

2    The general public has interest on the case proceeding to discovery because

3    discrimination and Title 7 claims are in the general public's best interest to proceed instead

4    of unnecessary delay.  Furthermore, the Department of Labor went after Nielsen not too

5    long ago: https://www.dol.gov/newsroom/releases/ofccp/ofccp20230912  Clearly, there is

6    some public interest in employment law and ensuring US companies are not discriminatory.

7

8    **Staying Discovery Will Further Prejudice Plaintiff**

9    Defendants argue that staying discovery will not prejudice plaintiff.  Here is a

10   screenshot from Defendants' motion letter to stay discovery:

11          ***Second***, Plaintiff cannot demonstrate any meaningful prejudice from a brief stay of discovery
        while the Motion to Dismiss is resolved.  *See Negrete v. Citibank, N.A.*, No. 15-civ-7250, 2015 WL

12

13   Defendants' actions do not support staying discovery (even for 1 day) because they

14   waited 7 months before filing their motion to dismiss (ECF 54).  Defendants should have

15   filed their motion to dismiss within 21 days after Plaintiff's Amended Complaint which was

16   mid last year!  Furthermore, Defendants waited months to file their motion to stay

17   discovery.  Defendants refused to confer with Plaintiff regarding his motion to compel.  **See**

18   **Exhibit B**.

19

20   **Defendants' Delay Has Prejudiced Plaintiff**

21   On October 16, 2023, Plaintiff reached out to Ms. Spangler asking to confer about a

22   motion to compel because Defendants ignored Plaintiff's discovery request.

23          Request to confer for Motion to Compel  ▶  Inbox ×

24          F L <frank.liu.96@gmail.com>                                    Oct 16, 2023, 4:12PM
            to Cardelle, Laura, Aubrey ▾
            Ms. Spangler,

25          I previously sent you an email titled "Requesting my New Jersey Sedgwick Case Files (case 1:22-civ-09084)" in which I have received no response.

26          I believe before a party files a motion to compel a response to discovery, the party must make a good faith effort to confer with the other party.

            Please let me know when we can confer as I plan to file a motion to compel discovery.

27          Thank you.

28   Cardelle Spangler replied back informing Plaintiff of the following:

1
2     **Spangler, Cardelle** &lt;CSpangler@winston.com&gt;               Mon, Oct 16, 2023, 4:34 PM
    to me, Laura, Aubrey ▾

3     Mr. Liu,

    The Court has not yet set approved your filing of your amended complaint or set a date for Defendants' renewed motion to dismiss.  Your request is, among other things, premature.  Thank you.

4     Sincerely,

    Cardelle

5     **Cardelle Spangler**
    Winston & Strawn LLP
    D: +1 312-558-7541
    winston.com

6

7    Nowhere in Spangler's email did Spangler state Plaintiff's amended complaint was

8 untimely.  In a later email, Spangler also stated there was no need to meet and confer (**also**

9 **See Exhibit B**):

10
11     **Spangler, Cardelle** &lt;CSpangler@winston.com&gt;             Oct 16, 2023, 4:45 PM
    to Aubrey, me, Caitlin ▾

    Your request is premature.  In addition, a request by email is not appropriate.  Accordingly, there is no need for a meet and confer.

12     Thank you,

    Cardelle

13     **Cardelle Spangler**
    Winston & Strawn LLP
    D: +1 312-558-7541
    winston.com

14

15    Spangler appears to have been waiting for the Court to "approve" my amended

16 complaint and <u>did not</u> even petition or update the Court about what she was waiting on, and

17 just assumed Defendants didn't have to file anything so Defendants could stop discovery

18 from happening.  It wasn't until the December 20, 2023 status conference did Mr. Smith

19 allege my Amended Complaint was untimely and that was the reason why Defendants

20 failed to file a responsive pleading.

21    Defendants takes a position of refusing to allow discovery to proceed to prevent

22 Plaintiff from getting justice.  Defendants delayed discovery from proceeding by waiting

23 over 7 months to file their motion to dismiss and their motion to stay discovery.  Although

24 Plaintiff has requested the Sedgwick New Jersey Workers Compensation files for quite

25 some time, Defendants have time and time again refused to release the documents to

26 Plaintiff even <u>before</u> they filed their motion letter to stay discovery (ECF 55).

27    Delaying discovery from beginning has prejudiced Plaintiff.  Key witnesses such as

28 Shannon Buggy (Senior Vice President Human Resources) and Tracy Staines (Vice

President Human Resources) have already left Nielsen.  Those two key witnesses were on the termination call.  Ms. Buggy was the person who terminated Liu.  Here is a video featuring the termination call: https://www.youtube.com/watch?v=J26u_Poxnkk

Furthermore, although Nielsen was valued at over 16 billion dollars in 2022, and claims to be the leader in audience measurement.  However, they are still going through layoffs even today.  Due to Nielsen's persistent layoffs, as discovery is further delayed, the less and less witnesses both Plaintiff and Defendants will have access to.  Therefore, Defendants' filing their Motion to Dismiss (ECF 54) over 6 months late has prejudiced the court proceeding already.  Plaintiff believes his claims are not time-barred and his Amended Complaint addresses the issue of why his lawsuit is not time-barred.  If the Court decides to peek into Defendants' motion letter to dismiss, then they should peek into Plaintiff's Amended Complaint.


**Defendants' Delay has caused Stress to Plaintiff**

A person who sues their former employer is put through a lot of stress.  Here, Plaintiff, he is suing as a pro se party, and is not a lawyer.  Being pro se puts me at an even higher level of stress.  The longer the lawsuit is unnecessarily delayed, the longer I have to suffer through the process.

Plaintiff hasn't worked in the US since Nielsen.  He has only had one job after Nielsen which was as a teacher.   Plaintiff was so psychologically affected by the racism, discrimination and retaliation that happened that he left the US to teach in China.  Plaintiff only taught for the 2019 to 2020 school year.  After returning to the US to sue Nielsen back in 2021 (lawsuit first filed in Northern District of California before being refiled in Southern District of New York), Plaintiff has not had a job.  The stress of litigation affects Plaintiff's livelihood, puts stress on Plaintiff and at times is very hard to bear.

Defendants' delay prejudices plaintiff because the unnecessary more than 6 month delay further delays Plaintiff from seeking justice, resolution and closure to try to move on with his life.  Defendants have NEVER offered Plaintiff an offer that did not violate New

10

York General Obligations Law Section 5-336. Plaintiff refuses to agree to any settlement that violates his first amendment rights which he holds to be important. Although Plaintiff desperately wants closure and to move on, Plaintiff will never agree to be forbidden from talking about the racism, discrimination and retaliation he experienced at Nielsen.

Plaintiff does not believe Defendants participated in the settlement mediation overseen by Hon. Judge Wang in good faith. The amount that was proposed (without revealing the number) is just 23.5% of the amount (without revealing the number) of what Defendants offered back in 2022 which although Plaintiff would have gladly accepted the amount, Defendants tried to add conditions and force Plaintiff into confidentiality in violation of NY GOL 5-336. Plaintiff believes Defendants used settlement back in 2022 as a means of estoppel and promissory estoppel to prevent Plaintiff from filing an appeal to the Ninth Circuit within 30 days after the Northern District of California lawsuit was dismissed for lack of personal jurisdiction without prejudice instead of being transferred directly to S.D.N.Y.

Plaintiff believes that closure and resolution is an important step to starting the healing process when someone experiences discrimination. Closure can come from a settlement, having one's day in court, or ultimately winning at trial. The longer a case is unnecessary delayed, the longer it can prolong the path to closure and healing. A stay in discovery prevents a case from moving forward.

Defendants' actions of filing a motion to dismiss over 6 months late have already prolonged Plaintiff's stress levels and delayed the ability for Plaintiff to move on and find closure. Had Defendants wanted to file their motion to dismiss (ECF 54) within 21 days after Plaintiff's Amended Complaint, they could have easily done so because they have 3 lawyers and if need be, Winston & Strawn (a big law firm) has more lawyers for them to seek assistance from. Defendants have already refused to comply with discovery. Now they have filed a motion to stay discovery, further preventing discovery from happening. Many times, lawyers try to delay and wear out pro se plaintiffs so they will give up on their case. Plaintiff's sole focus is this lawsuit and getting justice. Unnecessary delays cause

1  Plaintiff to grow older with his life being at a stand still at a low, and stressful point in his

2  life, and not have the closure he is looking for so he can try to move on with his life and

3  start to climb out of the dark valley he has been stuck in for far too long.

4        Plaintiff isn't paid hourly like Defendants' attorneys are to litigate the lawsuit.  This

5  lawsuit shouldn't be personal to Defendants' attorneys because they are paid to do a job,

6  and delays don't mean much to them personally.  This lawsuit shouldn't be personal to

7  Defendants because companies have no feelings and delays don't mean much to them

8  because companies don't biologically grow older.  However, for Plaintiff this lawsuit

9  matters a lot to him and is personal and there has not been closure for several years and he

10  is getting older.  The larger and larger employment history gap negatively affects Plaintiff.

11  Future employers may be cautious when seeing such a large gap because Plaintiff hasn't

12  worked in years.  Everyday, Plaintiff thinks about what happened at Nielsen and it is

13  painful.  The lawsuit would probably be a lot further along by now without Defendants'

14  unnecessary delay that not only has attributed to witnesses being laid off, but a personal toll

15  on Plaintiff.

16        Had Defendants filed their motion to dismiss (ECF 54), over 6 months ago, it may

17  have already been decided by now.  Plaintiff believes his lawsuit is not time-barred due to

18  estoppel, promissory estoppel and other arguments as presented in Plaintiff's Amended

19  Complaint, and should be allowed to proceed to discovery.

20        Plaintiff's first brought his lawsuit in the Northern District of California before the

21  EEOC 90 day right to sue letter expired.  The lawsuit was refiled within 30 days of

22  dismissal without prejudice for lack of personal jurisdiction in the Southern District of New

23  York.  Hon. Judge White even suggested it be refiled in Southern District of New York.

24  Plaintiff was estopped from appealing Judge White's ruling to the Ninth Circuit by

25  Defendants' actions.  While Plaintiff does not believe his lawsuit is time-barred in the

26  Southern District of New York (some of the arguments are already contained in the

27  Amended Complaint), Defendants' unnecessary delay in filing their motion to dismiss (ECF

28  54) has prejudiced plaintiff.  The Court should not delay discovery any further.

1

**Choosing the Right Test**

2     Plaintiff respectfully requests Judge Wang apply the balance of interests test to

3 decide on Defendants' motion to dismiss because she is not a district court judge who will

4 ultimately decide on Defendants' motion to dismiss should the motion survive Plaintiff's

5 motion to strike.



15     Because Defendants have not balanced any factors and Plaintiff's arguments are

16 compelling, the Court should rule in Plaintiff's favor and deny Defendants' motion to stay

17 discovery.  Furthermore, Defendants should not be allowed to do a balance of factors

18 analysis in their reply brief because they should have done that in their opening brief.  By

19 allowing Defendants to create new arguments that they were too indifferent to present in

20 their opening motion letter, it prejudices Plaintiff.

21     Simply put, Defendants can not hide the ball and save their arguments for last,

22 especially when they are the moving party.  Defendants' motion to dismiss is nothing but

23 filler and fluff and unfounded reasoning, and Plaintiff believes perhaps Defendants just

24 expect the Court to rule in their favor because lawyers trump pro se non-lawyers.  While

25 Plaintiff is not a lawyer, he hopes the Court carefully considers his arguments in the interest

26 of justice.

27

28

**Defendants Failed to Establish Good Cause to Stay Discovery**

Under Federal Rule of Civil Procedure 26(c), "a district court may stay discovery during the pendency of a motion to dismiss for 'good cause' shown." Hollins v. United States Tennis Ass'n., 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006). The following factors may be considered in determining whether a stay is warranted: "(1) whether there has been a strong showing that the claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; … (3) the risk of unfair prejudice to the party opposing the stay[;] (4) the nature and complexity of the action; and (5) the posture of the litigation." Computer Assocs. Int'l, Inc. v. Simple.com, Inc., 247 F.R.D. 63, 69 (E.D.N.Y. 2007).

Defendants' argument in their motion to dismiss predominantly relies on the assertion that the lawsuit is time-barred because Liu filed his lawsuit within 90 days of the EEOC letter in the Northern District of California, and then it was dismissed after a year and refiled in Southern District of New York.  However, Defendants did not take into account the estoppel and promissory estoppel arguments presented in Plaintiff's Amended Complaint, nor do they address the extensions granted in the state of New York due to Covid 19.  The case was with the EEOC for over 1.5 years.  Liu went through all the steps. Nielsen misled the EEOC about where personnel files are stored.  Nielsen claimed the files were stored in Florida but they were actually stored in the Netherlands, and Nielsen's lie prevented the EEOC claim from transferring over to New York.

There is a lot of facts in dispute, and the Court must not stay discovery because Defendants' motion to stay will be decided by Judge Wang, who does not have Defendants' permission to be the predominant authority to decide on the motion to dismiss because Defendants refuse a magistrate judge's jurisdiction.  Furthermore, Defendants admit that Plaintiff wants his Sedgwick New Jersey files and has not established why it is a burden to provide those files.  Plaintiff has not asked for interrogatories or any other discovery besides the Sedgwick New Jersey files.  All Nielsen has to do is ask Sedgwick for those files (if they aren't already in the possession of Nielsen).  Nielsen owns those files.  There is no burden to providing those files other than that they will be damaging for Nielsen because

14

the things contained in them will help show that Nielsen violated employment laws.  There is no good cause prejudice to Defendants to release the Sedgwick New Jersey files because those files are maintained by a company they contract with (Sedgwick) and have already been created years ago.  Sedgwick favors Nielsen because Nielsen is their client, and they do what Nielsen wants, so the files may even favor Defendants.

Nielsen refuses to acknowledge that my Sedgwick New Jersey workers' compensation claim was approved a short while after my termination.



Furthermore, I was terminated hours after I texted Nielsen Vice President of Human Resources Tracy Staines my full return to work letter (without restrictions).  Even though my workers compensation was approved, Nielsen refused to pay me any workers compensation.  Instead, they made it clear that they will use up my personal, vacation and sick days to cover the time I was forced by Nielsen not to work up until my termination.  Nielsen even tried to get me to do a drug screening after I was already terminated.  I went back to a follow-up MRI visit because Nielsen wanted to cover their bases after I already gave them my full return to work letter before terminating me.  I tried to get the drug test, but the paperwork Sedgwick faxed over to the clinic did not have a Sedgwick signature, so the clinic could not do the drug screen as it needed Sedgwick's signature for billing purposes.  After I raised the issue, Sedgwick alleged it was a mistake as I even took a picture of the "urgent" fax that Sedgwick faxed the clinic.

Furthermore, in May of 2019, the Sedgwick supervisor stated that I did not have lost wages for the injury.  Perhaps Sedgwick was OK that Nielsen took my earned vacation days, personal days and sick days from me instead of paying me for the lost time up to my termination.

Sedgwick made it clear that they will refuse to provide me my New Jersey Workers' Compensation case files without a court order.  Furthermore, William Reader has admitted my claim was "accepted" even though I have never received any compensation for the time forced off work, or compensated for my out of pocket personal expenses like buying an ankle brace and tape for my ankle.

It is clear that Nielsen uses up their employees until injured and leave them on their own without any compensation.  Nielsen believes they can eat up an employee's earned vacation days to cover work related injuries.

Please watch the termination call video: https://youtu.be/J26u_Poxnkk?si=xz-yPIPkvia1cCOi

**Nielsen Racists Coming Out Online Over Layoffs**

It is quite disappointing that Nielsen has allowed a number of racists to be employed at the company.  These racists are coming out online to post anonymously at layoffs.com to hate on Asian Indians (**See Exhibit D**) because Nielsen has revealed it is outsourcing work to India, Mexico and Poland.  However, the racist Nielsen employees appear to focus their hatred towards Asian Indians and India.

1       Nielsen's culture has contributed the culture of racism within its employees.  Instead

2   of condoning racists like Tanner Tate after being exposed to be a racist, Nielsen should have

3   done more to separate racists from employment like other companies have done.  Nielsen's

4   actions of retaliating against employees who speak out about racism and discrimination is

5   not only immoral but illegal.

6       Tanner Tate is one Nielsen leader who has been racist against Asian Indians.  He has

7   referred to an Asian Indian as "dot" which is racist (see the "dotnotfeather" hastag).

8

9    **Tanner Tate** @TWTapproved · 9 Aug 2013
    Got the Indian lady at the gas station to say go big or go home. #Hilarious
    #indians #dotnotfeather

10

11  Nielsen managers were informed of Tanner Tate and instead of responding, they blocked

12  Liu's personal email address after he emailed them some of racist Tate's tweets to Nielsen

13  managers.  Some time after racist Tate was exposed as a racist, Nielsen promoted racist

14  Tanner Tate from a manager to a Nielsen leader.

15

16  Not only is Tanner Tate a racist, he also objectifies women.

17

18

19  

20

21

22

23

24

25

26

27  Tanner Tate is the racist manager who called Liu a chink.  Nielsen condones racist behavior

28  because they haven't fired Tanner Tate.  He is still employed at Nielsen to this day.

1  **FURTHER ANALYSIS**

2  The fact that Defendants have filed a motion to dismiss (Docket No. 54) is not

3  sufficient to stay discovery, particularly where, as here, the motion rests on a false premise

4  that Plaintiff's lawsuit is time barred when Plaintiff asserts it is not due to estoppel and

5  promissory estoppel, and other factors as outlined in the Amended Complaint (ECF 44).

6  Defendants' motion letter to stay discovery doesn't even describe any "burden" they will

7  experience.  The word "burden" is only mentioned once in Defendants' motion letter to stay

8  discovery when referencing FRCP 26(c).  By reviewing Defendants motion letter, the Court

9  can see that Defendants have not satisfied the showing of good cause for burden and have

10  not satisfied the balancing test to support their motion to stay discovery.

11  Furthermore, Defendants have always misrepresented what Liu's original lawsuit

12  filed in the Northern District of California entails.  There were a number of issues including

13  but not limited to "discrimination, "retaliation" and "wage issues."  Getting Liu's New

14  Jersey worker's compensation documents is not "irrelevant" because Nielsen terminated

15  Liu after he provided them a full return to work letter.  The Sedgwick New Jersey case files

16  are key.  Even though Liu's claim was approved by Sedgwick, Nielsen decided to use up

17  Liu's vacation, sick and personal days then terminate him.  Nielsen has misled the EEOC

18  and the Court, and they continue to mislead the Court on the facts of Liu's lawsuit.

19  Nielsen abruptly filed this motion when all Plaintiff has asked for was the Sedgwick

20  New Jersey case files.  Nielsen has not identified any specific, undue discovery burden that

21  would be caused by releasing the New Jersey workers compensation files to Plaintiff in

22  Nielsen and/or Sedgwick's possession.  Sedgwick works for Nielsen after all.  Nielsen

23  forbid Liu from working because of a work injury, and when Plaintiff got the full return to

24  work letter, Nielsen terminated Liu hours later.  The Sedgwick New Jersey case files are an

25  essential part of Liu's case and Defendants are attempting to hide information in order to

26  subvert justice.

27  Because a motion to stay discovery is "tantamount to a request for a protective order

28  prohibiting or limiting discovery pursuant to Rule 26(c)," the movant must demonstrate

1   "good cause" for the limitation on discovery. Kron Med. Corp. v. Groth, 119 F.R.D 636,

2   637 (M.D.N.C. 1988); accord, Perry v. City of Pontiac, 254 F.R.D. 309, 312 (E.D. Mich.

3   2008) ("court[s] may fashion a protective order to limit discovery" under Rule 26(c)

4   "[u]pon good cause shown"). To establish "good cause" under Rule 26(c), "courts have

5   insisted on a particular and specific demonstration of fact, as distinguished from stereotyped

6   and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 101–02 n.16 (1981).

7   Defendants' argument that the Liu's Sedgwick New Jersey Workers' Compensation case

8   files are "irrelevant" **is disputed**.  Plaintiff wouldn't have been asking for them for years if

9   they didn't matter.  Furthermore, the case files are files about Liu.  These are not files about

10  other people.  There should be no reason why Defendants are hiding the ball other than that

11  the information in the files would help Plaintiff's lawsuit.

12      Consequently, a party moving to stay discovery under Rule 26(c) "must show a

13  particular and specific need for the protective order." Gray v. First Winthrop Corp., 133

14  F.R.D. 39, 40 (N.D. Cal. 1990) (applying same standard as Gulf Oil in denying motion to

15  stay discovery during pendency of motion to dismiss). To determine good cause, courts

16  perform "an individualized balancing of the many interests that may be present," United

17  States v. Microsoft Corp., 165 F.3d 952, 960 (D.C. Cir. 1999), but more weight should be

18  given "to interests that have a distinctively social value than to purely private interests . . . ."

19  Marrese v. American Acad. of Orthopaedic Surgeons, 726 F.2d 1150, 1159 (7th Cir. 1984)

20  (en banc), rev'd on other grounds, 470 U.S. 373 (1985); see also In re PE Corp. Sec. Litig.,

21  221 F.R.D. 20, 27 (D. Conn. 2003) (same).

22      Liu has already covered the prejudice he has experienced by Defendants' refusal of

23  providing discovery information to him.  Defendants motion letter (ECF 55) is merely

24  based on disputed assumptions that Plaintiff's discovery request is "irrelevant" and the false

25  assumption that granting a motion to stay discovery will result in no prejudice against

26  Plaintiff.  Both of Defendants' reasons to stay discovery are disputed by Plaintiff.  Instead

27  of putting the burden on Plaintiff to show that the discovery files requested are not

28  "irrelevant" and that there is burden (which Plaintiff already showed), the burden of proof

1   to stay discovery should rest on Defendants to show specifics of why discovery should be

2   stayed instead of Defendant's generic motion letter which failed to do the balancing test.

3   Furthermore, Defendants have not satisfied the elements of good cause in their opening

4   motion letter to stay discovery, and Plaintiff asks the Court to strike any new arguments

5   Defendants make in their reply letter because Defendants shouldn't be allowed to hide their

6   arguments until their closing brief as that is gamesmanship because Plaintiff does not get a

7   sur-reply.

8          Simply filing a motion to dismiss does not excuse Defendants from its requirement to

9   show particularized "good cause," because "a pending Motion to Dismiss is not ordinarily a

10  situation that in and of itself would warrant a stay of discovery." Turner Broadcasting

11  System, 3 Case 2:10-cv-14155-DPH-MKM Document 27 Filed 02/16/11 Page 10 of 24 Inc.

12  v. Tracinda Corp., 175 F.R.D. 554, 556 (D. Nev. 1997).

13         Furthermore, "the Federal Rules of Civil Procedure do not provide (and have never

14  provided) for an automatic stay of discovery during the pendency of any type of case-

15  dispositive motion, nor is the pendency of such a motion explicitly cited as a factor to be

16  considered under those rules." 2 Heartland Jockey Club Ltd. v. Penn Nat'l Gaming, No.

17  2:09-cv-804, 2009 WL 5171829, at *4 (S.D. Ohio Dec. 21, 2009); see also Hoxie v.

18  Livingston County, No. 09-CV-10725, 2010 WL 822401, at *1 (E.D. Mich. March 4, 2010)

19  (Majzoub, M.J.) (denying motion to stay discovery pending motion to dismiss).

20         In short, Nielsen has not demonstrated good cause.  1) Defendants for months have

21  been ignoring Plaintiff's request for the Sedgwick New Jersey files.  2) Defendants failed to

22  consider the strong public interests that weigh against a stay here.  3) Defendants failed to

23  present any arguments that affirmatively demonstrate good cause for delaying discovery in

24  this lawsuit.

25

26

27

28

1       **Defendants Could Have Filed a Motion to Stay Discovery in October 2023**

2           Here is an email I sent Ms. Spangler back in October 2022 asking to confer about my

3 motion to compel the release of the Sedgwick New Jersey files.  In the email, I also

4 mentioned Defendants have not filed a motion to stay discovery (also see **<u>Exhibit B</u>**).



8 Spangler emailed back refusing to confer stating it was "premature" even though Plaintiff

9 believes parties should confer about discovery disputes and make good faith effort to

10 resolve disputes.



15           Defendants not only have refused to comply with discovery requests, they also

16 unnecessary delayed filing their motion to stay discovery for months.  Plaintiff hasn't asked

17 for anything else except his Sedgwick New Jersey Workers Compensation case files.

18

19       **Defendants Decline to Provide Sedgwick NJ Files Only Because They Don't Want To**

20           Defendants have provided no good cause reason to stay discovery or refusing to

21 provide the Sedgwick NJ case files.  They do not allege there is a burden.  They only allege

22 it is "irrelevant" and assume a stay in discovery will not prejudice plaintiff which are two

23 disputed facts.

24           Furthermore, Defendants' attorney Mr. Brian Aubrey Smith stated on the December

25 20, 2023 status conference only bringing into question:

26     1) not sure if Defendants have the documents

27     2) providing the documents would affect the "scope of appropriate discovery"

28

> 5      MR. SMITH:  It's something I would like to talk with
> 6  my client about, your Honor.  I am not sure if they have any
> 7  concerns around providing those documents.  Frankly, I am not
> 8  sure that they have them, just because I had not.  Regarding a
> 9  request for workers comp, I think, as a general matter, they
> 10 would prefer to stay discovery until there is a ruling on the
> 11 motion to dismiss because I think that it may significantly
> 12 affect what the scope of appropriate discovery is in this case.

The Sedgwick New Jersey Worker's Compensation files are an important element of

Liu's case because Nielsen alleges Liu was terminated because he refused to provide

follow-up medical information to be allowed back to work.  Here is a screenshot from

Nielsen's EEOC rebuttal (**also see Exhibit A**):

### D. Nielsen Terminated Liu's Employment

Over an approximately six week period of time, Nielsen's Human Resources, Nielsen's worker's compensation coordinator, and Sedgwick (Nielsen's third-party benefits provider) repeatedly asked Liu to provide updated medical documentation, so that he could return to work as he requested to do so.  Liu refused to return to a medical provider to get updated documentation.  Sedgwick made medical appointments on his behalf and Nielsen provided him with specific directions.  Liu was uncooperative.  Throughout this time, Liu refused to provide the necessary paperwork for a worker's compensation leave and was fully paid by Nielsen.

During Liu's fully paid medical leave, he continued to perform work-related tasks on his computer.  Nielsen personnel directed Liu to stop work and to obtain the needed medical paperwork. In response, Liu was rude, abusive, and raised his voice.

Liu refused to provide updated medical information or documentation to return to work, although he continued to request to do so.  Ultimately, Liu was terminated for his repeated refusal to cooperate in a professional manner with routine requests for additional medical information.

Liu was terminated by Nielsen during a call with Tracy Staines and Shannon Buggy on April 23, 2019.  He was paid until Friday, April 26, 2019, so that he could return company property and his rental car.  Liu's manager, Tanner Tate, did not participate in the decision to terminate Liu.

Plaintiff did provide a full return to work letter and was terminated AFTER he

provided the full return to work letter.  Plaintiff **denies** being rude, abusive and raising his

voice to Nielsen personnel.  Liu's termination was retaliatory.  Nielsen retaliated against

Plaintiff because because they knew Liu wanted to file a complaint against racist manager

1  Tanner Tate.  Liu was prevented from speaking to HR about Tanner Tate because he was
2  told he couldn't work and speaking to HR about complaints was considered work.

3



9  Shannon Buggy was Senior VP Nielsen Human Resources.  She wrote on April 2, 2019 "I
10 will not forward your email to anyone. Let me know when you return and we can connect."
11 **Also see Exhibit C**.

12       Instead of connecting with Liu after he texted Tracy Staines (VP Human Resources)
13 his full return to work letter, Shannon Buggy terminated Liu over the phone.  Liu did not
14 have a chance to voice his complaint against racist Tanner Tate before being terminated.  As
15 mentioned earlier, the termination call is online at https://www.youtube.com/watch?
16 v=J26u_Poxnkk

17

18                                    **CONCLUSION**

19       Granting the motion to stay discovery would result in undue delay in the progression
20 of this case. Time is of the essence considering all the layoffs that have been happening at
21 Nielsen, and any delay in discovery would greatly prejudice Plaintiff. The longer discovery
22 is postponed, the greater the risk of evidence loss or deterioration of memory, witnesses
23 being laid off – which would all hinder the fair resolution of Plaintiff's lawsuit.

24       Discovery is an essential phase of the litigation process aimed at uncovering relevant
25 facts and evidence necessary for the fair adjudication of the case. Allowing discovery to
26 finally proceed without any more delay from Defendants would contribute to a more
27 efficient and thorough resolution of the dispute. Staying discovery would only serve to
28 prolong the litigation process unnecessarily in Defendants' favor.

1    Defendants' motion fails to provide a compelling justification for staying discovery.

2    Defendants failed to do a balance of factors test in their motion letter to stay discovery, and

3    should not be allowed to do one in their reply brief because they should have done it in their

4    opening brief.

5    Defendants ask the Magistrate Judge to assess the merits of their untimely motion to

6    dismiss even though the Magistrate Judge will not be the person who decides on the

7    dispositive motion to dismiss because Defendants will not accept a magistrate judge's

8    jurisdiction.  Mere inconvenience does not warrant postponing the discovery process

9    especially considering the fact that a pro se plaintiff will hardly have the resources to do in-

10   depth discovery like those with lawyers.  Furthermore, Defendants have not provided any

11   specific good cause that would establish releasing Liu's Sedgwick New Jersey Workers

12   Compensation files will be a burden to them.  Liu's Sedgwick New Jersey Workers

13   Compensation files is all Liu has asked for.  Defendants ignored Liu's request, then refused

14   to confer when Liu wanted to confer about a motion to compel.  Defendants finally filed

15   their motion letter to stay discovery after so much time has already passed.  Defendants

16   could have filed their motion letter to stay discovery a long time ago.  Why did they wait so

17   long?

18   As mentioned, all Plaintiff has asked of Defendants is for the release of the Sedgwick

19   New Jersey Worker's Compensation Files.  Sedgwick refuses to release the files without a

20   court subpoena or Nielsen's authorization.  Without a clear showing of good cause or

21   extraordinary circumstances, the court should not disrupt the normal course of litigation.

22   Courts have consistently held that motions to stay discovery should be granted

23   sparingly and only upon a showing of exceptional circumstances. In the absence of such

24   circumstances, courts have emphasized the importance of allowing discovery to proceed in

25   the interest of fairness and justice.  Plaintiff believes even pro se parties should have access

26   to justice.

27   Rather than staying discovery entirely, limited discovery can also be an alternative

28   solution pending the Court's decision on Plaintiff's Motion to Strike and Defendants'

motion to dismiss.  Defendants will not be prejudiced by releasing the Sedgwick New

Jersey Worker's Compensation files as they can easily be sent electronically to Plaintiff.

Based on the foregoing reasons, I respectfully request that the court deny Defendants'

Motion to Stay Discovery and allow the discovery process to proceed without further delay

or gamesmanship from Defendants. I trust that the court will carefully consider the

arguments presented herein and the exhibits in support in order to make a decision in the

interest of justice.


Respectfully submitted,


Frank Liu


Dated 3/4/2024          Frank Liu

Pro Se Plaintiff