**CARDELLE SPANGLER**
Partner
(312) 558-7541
CSpangler@winston.com

September 13, 2024

**VIA CM/ECF**

Honorable Ona T. Wang
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Frank Liu v. The Nielsen Company (US), LLC, et al.*; Case No. 1:22-cv-09084-JHR-OTW

Dear Judge Wang:

    We represent Defendants The Nielsen Company (US), LLC ("Nielsen") and TNC US Holdings (collectively, "Defendants") in the above-referenced action. We write to seek a pre-motion discovery conference to request a protective order under Federal Rule of Civil Procedure 26(c). Plaintiff Frank Liu refuses to stop sending emails to Nielsen's current and former employees, at their work and personal email addresses, relating to his allegations in this litigation and asking them to "help" him. This behavior is yet another event in a longstanding pattern of abusive and harassing behavior aimed at Nielsen, its employees, and its counsel. A protective order is necessary to protect Defendants and Nielsen's agents and employees from further annoyance, embarrassment, oppression, undue burden, and expense, and to prohibit Plaintiff from improperly contacting current Nielsen employees regarding the subject matter of this representation outside of the proper discovery channels.

    On August 29 and September 12, Defendants' counsel emailed Plaintiff to again ask that he stop contacting Nielsen's employees directly at their work and personal email addresses. In the alternative, on September 12, Defendants attempted in good faith to confer by phone about their anticipated motion for a protective order. As of the filing of this letter motion, Plaintiff has not responded to Defendants' request for a call. Defendants therefore appeal directly to the Court for relief.

    Federal Rule of Civil Procedure 26(c) allows a court, for "good cause" and in favor of "any person from whom discovery is sought," to "issue an order to protect a party or person from annoyance [or] embarrassment." Fed. R. Civ. P. 26(c)(1). "A court has 'broad discretion' under Rule 26(c) to 'decide when a protective order is appropriate and what degree of protection is required." *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, No. 24-civ-2783, 2024 WL 2833114, at *1 (S.D.N.Y. June 3, 2024) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Further, a party may seek an order to protect the rights of a witness "if it believes its own interest is jeopardized by discovery sought from a third person." *Freydl v. Meringolo*, No. 09 CIV 07196 BSJ KNF, 2011 WL 134972, at *4 (S.D.N.Y. Jan. 7, 2011) (internal quotations and citations omitted).

    In July 2024, Defendants learned that Plaintiff was again sending mass emails to Defendants' current employees at their Nielsen email addresses with the subject line, "How Nielsen destroyed my

1

life – The story of a former Nielsen Ratings employee's quest for Justice." (Declaration of Caitlin W. McCann "McCann Decl." ¶ 4.) Plaintiff's emails include allegations related to his case, links to videos and tweets, ask the recipient to "help" him by spreading his email and his videos, and state the recipient is "welcome to reach out to me if you wish."[1] (*Id.*) In August 2024, Defendants learned Plaintiff was also sending similar mass emails to Nielsen's current employees at their *personal* email addresses. (*Id.* ¶ 6.) Defendants do not know how Plaintiff obtained these personal email addresses, several of which were for senior Nielsen executives with no connection to Plaintiff. (*Id.*)

On August 29, 2024, Defendants' counsel emailed Plaintiff, advised him it was improper for him to contact certain employees of Defendants, except through counsel of record, and requested that he immediately stop contacting Nielsen employees at their work and personal email addresses. (*Id.* ¶ 7.) Plaintiff refused. Instead, Plaintiff continues to email countless Nielsen employees at their work and personal email addresses. (*Id.*) As of the date of this filing, Defendants have confirmed that between July 27 and September 10, Plaintiff emailed at least 15 Nielsen employees (all but one of whom are current), including the Associate General Counsel of Global Employment, high level officers of the Company, and members of the Field Organization (like Plaintiff), among others. (*Id.*) He has emailed Defendants' private equity owners. (*Id.*) Defendants also learned that one of the individuals that Plaintiff contacted forwarded his email to Tanner Tate, who is central to many of Plaintiff's allegations in the Complaint. (*Id.*) Given that Defendants only know of the emails reported by employees to Defendants' legal and human resources team, and because Plaintiff's emails are worded in a manner suggesting they are sent to numerous undisclosed recipients, it is likely that Plaintiff has emailed many more Nielsen employees beyond those identified to date, including potential fact witnesses in Plaintiff's case.

Defendants have previously advised the Court of Plaintiff's harassing and abusive email activity, including by confidential letter to Judge Rearden in reply to Plaintiff's response to Defendants' letter motion to seal, dated April 14, 2023. Specifically, after Plaintiff's termination in 2019, he inundated Nielsen's employees – including Nielsen's CEO – with emails, until his email address was blocked. Plaintiff then changed his email address and continued to send a barrage of emails to Nielsen's employees and its counsel. Plaintiff has repeated his pattern of unnecessary, unprofessional and, at times, harassing emails in his interactions with defense counsel. He has emailed the Chairman and the Co-Executive Chairman of Winston & Strawn, as well as another prominent partner in the firm's Los Angeles office – none of whom have any connection to his case. On one occasion, he accused a legal secretary at Winston & Strawn of committing perjury. His recent flurry of email activity is of particular concern because he is targeting current Nielsen employees at their personal email addresses, outside of the formal discovery process, and without Nielsen's involvement or the Court's oversight.

Plaintiff's conduct has annoyed, harassed, alarmed, and distracted the Nielsen employees that he has contacted. Many were contacted at their personal email addresses and expressed concern and frustration regarding how Plaintiff obtained their personal contact information. (*Id.* ¶ 7.) This in turn has required repeated engagement by Nielsen's legal and human resources teams. Plaintiff's unsolicited and unwanted outreach is disruptive to Nielsen's day-to-day business operations and imposes undue burden

---

[1] "Nielsenexposedtotheworld@gmail.com", which we believe to be Plaintiff, also emailed the current employer of Anita Pancholi, Nielsen's former General Counsel of Global Labor and Employment. In that email Plaintiff asserted an inflammatory, false and defamatory claim against Ms. Pancholi, and asked her employer for comment. (McCann Decl. ¶ 5.)

and expense on its employee population and to Defendants that is not commensurate with this litigation in which *discovery is stayed*.[2]

Even if discovery were not stayed, Plaintiff's conduct would not be proper in reaching out directly to certain officers and potential fact witnesses of Defendants that he knows to be represented by counsel. Plaintiff is a *pro se* litigant that is, in effect, representing himself in this action. His *ex parte* communications with current Nielsen employees are akin to violating the New York Rules of Professional Conduct 4.2(a), which provides that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Where, as here, a party is an entity, Comment 7 to Rule 4.2(a) prohibits communication with certain delineated constituents of a represented organization.

Plaintiff is aware that both entity Defendants are represented by counsel. He has not received consent from Defendants to contact its employees or private equity owners at their work and personal emails. Several of the employees Plaintiff has extrajudicially contacted may fall under the categories of employee outlined in Comment 7 to Rule 4.2, including because they are Defendants' agents and managerial employees, may ultimately be called as witnesses in this litigation, and/or are in contact with key witnesses in this litigation. Others are not directly involved in the underlying litigation, but may have privileged or confidential information that should not be disclosed and must have the opportunity to seek the advice of Defendants' lawyers. Yet, Plaintiff continues to reach out to current employees, imploring them to "help" him by sharing his allegations against Defendants or to reach out to him.

This Court, as well as others, has granted protective orders under Rule 26(c) in similar situations, where a lawyer communicated with a represented party in violation of Rule 4.2(a) or for the purpose of "annoying, embarrassing, and harassing." *See e.g., Philips v. Fashion Inst. of Tech.*, No. 20-cv-002210, 2024 WL 4103596, at *4 (S.D.N.Y. Sept. 6, 2024); *see also Forshey v. Sound Oral & Maxillofacial Surgery, P.S.*, No. C06-5335, 2007 WL 81872, at *1 (W.D. Wash. Jan. 8, 2007) (granting a protective order preventing the opposing party "from contacting any current or former employees" of the movant's current workplace without going through the proper discovery channels). Some courts have precluded attorney communications with managerial employees of an enterprise. *See, e.g., Frey v. Department of Health and Human Services,* 106 F.R.D. 32, 36–37 (E.D. N.Y. 1985).

Defendants respectfully request that a protective order be granted prohibiting Plaintiff from communicating with current Nielsen employees regarding the subject matter of this litigation outside of proper discovery channels, and stating that further such email communications will result in appropriate sanctions and/or relief, up to an including dismissal of this action. Plaintiff has demonstrated an unwillingness to cease this improper conduct on his own, and Defendants implore the Court for a protective order to protect Nielsen and its employees from further communications from Plaintiff, and ensure Plaintiff complies with this Court's Order and his ethical obligations in representing himself in this litigation. This requested protective order is narrow in scope and would not hamper Plaintiff's ability to obtain discovery through the proper channels once discovery is formally opened.

---

[2] Discovery in this matter is currently stayed temporarily pursuant to the Court's August 16, 2023 Order, directing Defendants to produce Plaintiff workers' compensation files in their possession by August 23, 2024 (which Defendants produced) and staying all other discovery in this matter pending a decision on the Report & Recommendation at ECF 105. (Dkt. 106.) As of the date of this filing, this Court has not issued a decision on the Report & Recommendation and discovery therefore stayed.

Dated: September 13, 2024

Respectfully submitted,

/s/ *Cardelle Spangler*
Cardelle Spangler (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
CSpangler@winston.com

Caitlin McCann (admitted *pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, #3800
Los Angeles, California 90071
(213) 615-1700
CMcCann@winston.com

*Attorneys for Defendants*
*TNC US Holdings*
*The Nielsen Company (US) LLC*