1. Frank Liu
2. 304 S. Jones Blvd #3416
3. Las Vegas, NV 89107
4. 818-835-0498
5. [frank.liu.96@gmail.com](mailto:frank.liu.96@gmail.com)
6. Pro Se Plaintiff
7. 
8. 
9. **IN THE UNITED STATES DISTRICT COURT**
10. **FOR THE SOUTHERN DISTRICT OF NEW YORK**
11. 

| | |
|---|---|
| Frank Liu<br><br>      Plaintiff,<br><br>vs.<br><br>The Nielsen Company (US) LLC<br>      and<br>TNC US HOLDINGS,<br>      Defendants. | **Case #1:22-cv-09084-JHR-OTW**<br><br>**Plaintiff's Motion for an Extension to Respond to Defendants' Motion-Letter (ECF 107), or in the alternative, Motion for the Court to Strike ECF 107** |

12. 
13. 
14. 
15. 
16. 
17. 
18. 
19.

Dear Judge Wang,

Plaintiff respectfully requests either an extension until September 30, 2024 to respond to Nielsen's ECF 107, or that Nielsen's ECF 107 be stricken due to Defendant's failure to confer with Liu in good faith before filing their letter. Under L.R. 37.2, any party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party in person, virtually or by telephone to try to resolve the dispute. Defendants did not try to confer in good faith as will be proven in this letter-motion.

Furthermore, Plaintiff asserts his emails in question have nothing to do with discovery, and since discovery is stayed, Plaintiff thinks that perhaps a Rule 37.2 conference might be improper. What Defendants are seeking appear to be an injunction and that might be a Rule 65 motion, which too would be meritless.

## **Cardelle Spangler Refused to Confer with Liu**
### **(Emails from August 29)**

Ms. Spangler first brought up that it was improper for a party to contact "certain employees" of the other party on August 29, 2024 when she responded to an email Liu sent regarding the possibility of arbitration.



Liu needed clarification on Spangler Point #2, and asked who these "certain employees" are.

Case 1:22-cv-09084-JHR-OTW    Document 111    Filed 09/17/24    Page 3 of 14

1  Ms. Spangler refused to tell Liu who the "certain employees" are that he shouldn't email.
2  Because Liu believed Ms. Spangler was hinting at filing something with the Court, Liu
3  requested to set up a confer call with Spangler to have a better understanding of the
4  demand.



10 Spangler refused to confer.



14 Liu respond back by again requesting to confer in order to better understand her demand.



22 Spangler again refused Liu's attempt to confer. Furthermore, she stated she does "not intend
23 to engage on this topic further" which Liu interpreted as a retraction of her demand.

1  If Spangler's demand was important, it would have been best to confer with Liu, so Liu
2  could better understand the demand as it lacked details and specifics.  Because of
3  Spangler's refusal, and her statement about not intending to engage on this topic further, Liu
4  assumed he could disregard her demand.  This is reflected in Liu's email reply back to her:



## Caitlin McCann's Tricky Email that Was Not Interpreted as a Confer Request
## (Email on September 12)

12 On September 12, 2024, Caitlin McCann emailed Liu the following:



18 McCann's stated "If you will not stop this activity, please let us know your availability for a
19 call tomorrow to discuss Defendants' anticipated motion for a protective order."
20      One reason why Liu sent emails was to promote Showcase Audit's video about him
21 which was mainly about how Liu had his rights violated by police.  The video is available
22 here: https://youtu.be/4MUO2S6YNng
23      Liu actually stopped sending emails on the morning of Sept 11, 2024 after he saw
24 that the video Showcase Audits made about him had surpassed 200K view.  Liu had no
25 immediate plans to send any more emails after the video reached passed 200K views.
26 Because the last such email Liu sent was at 1:51 AM PST on Sept 11, 2024, Liu stopped
27 sending the emails more than 34 hours before McCann sent Liu her Sept. 12, 2024 email.

1    Furthermore, Liu does not believe it is "good faith" for McCann to word her email in
2 such a way because it appeared to be a IF/THEN statement, and was not an actual confer
3 request.  However, Liu did intend to reply back to her and needed time to do some research
4 before he replied because Liu isn't a lawyer and felt like McCann skilled at trickery.  As an
5 example, in ECF 101, Defendants inverted and misrepresented Liu's position to the Court
6 regarding a second stay in discovery.  Liu was willing to agree to a second stay if
7 Defendants gave him the Sedgwick NJ workers compensation files.  Furthermore, as
8 mentioned, Liu tried to set up a confer call with Spangler back on August 29 for Ms.
9 Spangler's demands, but Spangler denied Liu's requests to confer.
10
11    **Liu Responded Back to McCann's September 12 Email The Next Day**
12    Liu did plan to respond back to McCann's email on Sept. 13, but had not finished his
13 email reply and was busy doing other things.  Liu did not interpret McCann's request as a
14 request to confer because Liu had already stopped sending out versions of the email after
15 the Showcase Audits video hit over 200K views.
16    On Sept. 13 at 2:18 PM PST, Spangler filed ECF 107 and McCann filed ECF 108
17 before Liu could reply back.  I think McCann and Spangler **did not** really want to confer at
18 all and tried to send Liu a if/then statement email to confuse Liu, and then went to file ECF
19 107 and 108 the next day before Liu replied back.  As another reminder to the Court,
20 Defendants failed to confer in good faith before filing their letter-motion to seal (ECF 91)
21 and Plaintiff had to get Defendants to confer after Defendants already filed ECF 91.
22    Liu replied back on Sept. 13, 2024, and did ask to confer even though Defendants
23 had already filed their ECF 107 motion.
24
25
26
27
28



Defendants did not reply back to Liu's email that was sent Friday.


## Liu Reached Out to Defendants for Extension

On Monday morning (Sept 16), Liu emailed Spangler and McCann, a request for extension to file his response by Sept 30, 2024.



Ms. McCann replied back at 3:59 PM EST, denying Liu's request and only offered until September 20, 2024 for Liu to file his response.

Liu pointed out that Ms. Spangler did not confer in good faith before filing ECF 107 and appears to have ignored Liu's email sent Friday which was 3 days ago.

> **F L** <frank.liu.96@gmail.com>  4:19 PM (2 minutes ago)
> to Caitlin, Cardelle
>
> Ms. McCann,
>
> My original request sent this morning was if Defendants agree to allow me to file my response by Monday Sept. 30, 2024. I guess Defendants are denying the extension request. Defendants did not even try to confer with me in good faith before Defendants filed their motion-letter in ECF 107. As a reminder, on August 29, 2024, Ms. Spangler denied my request to confer.
>
> I sent you and Ms. Spangler an email last Friday about a request to confer for this week because Defendants failed to confer in good faith before filing ECF 107, but it appears both you and Ms. Spangler are choosing to ignore that email. The email sent on Sept. 13, 2024 asked, "Even though Ms. Spangler filed her protective order motion already today, I would still like to confer. Does next Wednesday or Thursday at 2:30 PM PST work for you or Ms. Spangler?" Would it be correct that neither you nor Ms. Spangler want to confer with me since there has not been an email response back?
>
> Thank you.

Ms. McCann, then replied back agreeing to confer on Wednesday at 2:30 PM PST.

> **McCann, Caitlin**  4:33 PM (15 minutes ago)
> to me, Cardelle
>
> Good afternoon,
>
> I'm available Wednesday from 2:30 to 3 pm PT.
>
> Best,
> Caitlin

Liu then replied back asking if Defendants will agree to the extension until Sept. 30, 2024, or for them to withdraw their motion until parties have properly conferred first.

> **F L**  4:49 PM (1 minute ago)
> to Caitlin, Cardelle
>
> Ms. McCann,
>
> In that case, can you agree to give me the extension to file the response by September 30, 2024? Or withdraw your motion until we have properly conferred first? Your ECF 107 motion was filed in bad faith.
>
> Thank you.

At the time of submitting this filing, neither Ms. Spangler or Ms. McCann have replied back to Liu's request. It would hardly seem fair for Defendants to game the system like how they have by refusing to confer when Plaintiff was trying to set up a time to confer back on August 29, then on September 12 for Ms. McCann to email a "IF/THEN" statement that Liu did not interpret as a request to confer at all.

  Perhaps lawyers may interpret the statement, "If you will not stop this activity, please let us know your availability for a call tomorrow to discuss Defendants' anticipated motion for a protective order" as a request to confer. But to Plaintiff, who is not a lawyer, he reads it differently. However, in order to respond back to them if Liu will agree to "stop this activity," Nielsen's lawyers needed to define "this activity" or provide details for Liu to

consider. Both Spangler's and McCann's emails, did not provide specifics on what they were demanding.

## MIXED MESSAGES

Liu was under the impression that Spangler backed away from whatever it was she was demanding back on August 29 by stating she did not intend to engage on the topic further and refused to confer with Liu. That seemed like a pretty clear message and Liu interpreted as Spangler backing off from the topic she brought up.

That wasn't the first time one of Nielsen's attorneys made a statement about not wanting to engage on something. For example, on August 23, 2024 Liu sent Spangler and McCann an email because it does not look like Nielsen complied with Judge Wang's order regarding releasing the worker's compensation files in Nielsen's possession to Liu. Liu did not believe Ms. Newman had emailed him "all of my worker's compensation files in Defendants' possession."

> F L <frank.liu.96@gmail.com>                                    Fri, Aug 23, 3:17 PM
> to Caitlin, Cardelle
>
> Ms. Spangler and Ms. McCann,
>
> Judge Wang's order (ECF 106) states:
>
> • Plaintiff's motion to compel (ECF 80) is **GRANTED**. Defendants are directed to produce to Plaintiff his worker's compensation files in their possession by **August 23, 2024**.
>
> Ann Newman (Practice Coordinator at Winston & Strawn LLP) emailed me a document with filename: DEFNIELSEN0001 - DEFNIELSEN0100.pdf and a proof of service PDF at 2:31 PM PST (which is 5:31 PM EST). After briefly looking through the documents that Ms. Newman emailed me, it does not look like she has emailed me all of my worker's compensation files in Defendants' possession.
>
> I do request you email me all of the worker's compensation files related to me by the end of the day (including Sedgwick claim notes, and other files that have been omitted) which belong to Nielsen.
>
> Thank you.

McCann replied back stating they complied with the order and will not respond to any further emails about this topic.

> McCann, Caitlin                                                 Aug 23, 2024, 3:28 PM
> to me, Cardelle
>
> Mr. Liu,
>
> We have complied with the Court's Order. We will not respond to any further emails on this topic. Thank you.
>
> Best,
> Caitlin

I guess Spangler and McCann can stop discussions about anything at will when it suits them. It's really curious how Spangler refused to confer with Liu, and then had McCann email Liu an unclear and ambiguously worded email on Sept 12, then when right ahead to filing ECF 107 on Sept 13. This doesn't look like good faith to Plaintiff.

**Plaintiff's Emails Have Nothing to Do with Discovery**

Defendants failed to submit the emails in question as an exhibit for full transparency. Liu's emails to former and current Nielsen employees have nothing to do with discovery despite Defendants' allegations. Liu intends to prove this in his official response should the Court grant him the extension. However, as of now Liu doesn't have the time to fully respond to Defendants' allegations in this filing. Furthermore, Liu does not believe he has emailed any @nielsen.com email address after receiving Ms. Spangler's August 29 email. Liu was more careful to exclude @nielsen.com email addresses after Spangler's email.

**"Certain Employees"**

In ECF 107, Spangler writes:

> On August 29, 2024, Defendants' counsel emailed Plaintiff, advised him it was improper for him to contact certain employees of Defendants, except through counsel of record, and requested that he immediately stop contacting Nielsen employees at their work and personal email addresses. (*Id.* ¶ 7.)

In ECF 108, McCann declares:

> 7. On August 29, 2024, Defendants' counsel emailed Plaintiff, advised him it was improper for him to contact certain employees of Defendants, except through counsel of record, and requested that he immediately stop contacting Nielsen employees at their work and personal email addresses. Plaintiff refused. Instead, Plaintiff continues to email

Perhaps Spangler and McCann should just put "certain employees" in quotation marks because Spangler literally told Liu not to email "certain employees" without actually naming who shouldn't be emailed.

> Spangler, Cardelle   Thu, Aug 29, 10:27 AM
> to me, Caitlin
>
> Mr. Liu,
>
> A few issues:
>
> 1. With respect to a potential resolution, as you know, Judge Wang has recommended that you be appointed pro bono counsel. I will gladly discuss potential resolution with your pro bono counsel once he or she is appointed. In the meantime, my client and I do not believe that further settlement or related communications will be constructive.
>
> 2. It is highly improper for a party to a lawsuit to contact certain employees of the other party, except through counsel of record, which in this case is me. I have been informed that you have nonetheless been looking up the personal email addresses of certain Nielsen employees, and emailing those employees about this case, at both work and their personal email addresses. Please stop that activity immediately. If my client learns of another such incident, we will need to take the issue up with Judge Wang.
>
> 3. I will ask my client about your request below regarding arbitration.
>
> Thank you,

Plaintiff even asked who these "certain employees" are, but of course Spangler and McCann refused to elaborate.

> F L <frank.liu.96@gmail.com>   Aug 29, 2024, 10:39 AM
> to Cardelle, Caitlin
>
> Ms. McCann,
>
> Please elaborate on #2. Who are these "certain employees" that you and Ms. Spangler represent? Furthermore, you are welcome to bring up anything you feel has merit with Judge Wang.
>
> Thank you.

1  Plaintiff believes Defendants' use of the phrasing "certain employees" in ECF 107 and 108
2  perhaps might suggest that perhaps Spangler actually mentioned specific people or names
3  for Liu not to contact.
4
5                      **Defendants' Identified Witnesses**
6       For this lawsuit filed in the Southern District of NY, Defendants have not sent Liu
7  their initial disclosures, or list of witnesses. However, on Jan. 3, 2022, Defendants did email
8  Liu initial disclosures when the lawsuit was pending in the Northern District of California.
9  In that version of the initial disclosures, Nielsen identified the following as witnesses: Frank
10 Liu (Plaintiff), Tracy Staines, Shannon Buggy, Tanner Tate and Tania Rosello.



18 Liu has not emailed Tanner Tate, Tracy Staines, Shannon Buggy or Tania Rosello since
19 2019.  Furthermore, Liu believes he has not emailed Tanner Tate whatsoever after he was
20 terminated back on April 23, 2019. Moreover, even though Defendants' initial disclosures
21 do not list J Tracy Booth or Lisa Schuerenberg, Liu does not believe he has emailed any of
22 them since 2019 either.
23
24                      **Defendants Failed to Follow Rule 37.2**
25      Defendants' allegations and motion for a 37.2 conference are meritless, and they
26 appear to be invoking a conference about discovery matters when no discovery has taken
27 place outside of Plaintiff receiving *some* workers compensation files in Defendants'
28 possession that were ordered to be released to Liu by this Court Order in ECF 106. The

reason why *some* is italicized is to emphasize that Defendants did not turn over all of the workers compensation files to Liu as things are missing. However, this is a separate matter, and Liu believes he may separately bring this up to the court in a future filing.

Plaintiff has accepted the Court Order in ECF 106 which put a stay in discovery until the Court rules on Defendants' Motion to Dismiss. Defendants are intentionally misleading the Court about the contents of Plaintiff's email in trying to obtain a protective order preventing Plaintiff form communicating with any Nielsen's employees. There are reasons outside of Liu's lawsuit for communicating with former and current Nielsen employees which the official response will detail.

### Nielsen's Protective Order Could Prevent Liu from Helping Others

A few months back, Ronda McCallen reached out to Liu because she was frustrated about how Nielsen was treating her. Below, Liu will detail how he helped a former Nielsen employee avoid a felony arrest by convincing Ronda to return the company car. She was refusing to return it because she believed Nielsen didn't pay her what she was owed. She also believed Nielsen may have discriminated against her based on her gender.

I **did not** plan on sharing how I helped Ronda in a public court filing because I helped her because I believe she needed help and was devastated by what Nielsen did to her. Helping Ronda in no way advances my lawsuit. I helped her because I wanted to help her. However, because of Nielsen's ECF 107 and accusations, I need to defend my actions.

Below is one email Ronda shared to me about her frustration. She believed Nielsen treated her like a criminal, and that her manager warned her teammates not to talk to her.

> **Ronda McCallen** <██████@gmail.com>  
> to me  
> Sun, Jul 14, 3:19 PM
>
> Last Friday I hadn't heard back from Kelli Dawson as of midafternoon so I emailed her. Within minutes she responded with all these attachments. Frank, right hand to God, I do not remember the goal reading like this! And I know that nowhere on my MRPs was there HH information.
>
> In looking at these attachments I still don't understand why she needed a week to forward my files or waited until I asked again Friday afternoon. Especially since it only took her minutes.
>
> I just can't let this go as much as I try. It's really bothering me. I have always taken pride in being a good employee and doing my best. I've never been terminated from any job since I began working at fifteen.
>
> Plus I don't know why my former manager couldn't get rid of me fast enough. I felt like I no sooner started that he wanted rid of me. And the final kick in my face is they treated me like a common criminal. <u>To the point where he warned my teammates not to talk to me!</u>
> I'm so confused and hurt. I wish someone would explain why an employee with 8 months of tenure is fired, thrown under the bus and ostracized for not meeting metrics.
> I'm sorry for venting again Frank. Can I ask your opinion? Do you think I'm reading too much into this? That it's not personal and just a matter of metrics like I was told?
> Just curious

1  Here is a text message between Ronda and her manager where the manager threatened to
2  report the company car as stolen.



12  After I realized Ronda was using the Nielsen company car as leverage to force Nielsen to
13  pay her the money she was owed, I stepped in immediately to persuade Ronda to return the
14  company car.
15      I informed Ronda that she could seek help from the Department or Labor or her
16  state's agency that oversees wage laws.



24   I really wanted to convince Ronda to return the company car immediately because even
25  though Nielsen wronged her, she still needed to do the right thing herself because otherwise
26  Nielsen would have gotten her arrested and charged with one or more felonies.
27

1  Here is an email Ronda sent me on July 1, 2024 admitting that if it wasn't for my advice,
2  "the car would still be sitting here."



7  There is some good news to the
8  Ronda story.  Not only did my advice
9  keep her from being arrested, she did
10 take my advice and reported Nielsen
11 to a state agency.  And on July 22,
12 2024, there is a letter that Nielsen's
13 lawyer Lee E. Tankle wrote that
14 details a resolution to Ronda's wage
15 dispute.  It looks like Nielsen agreed
16 to pay Ronda $333 in unpaid bonuses
17 and also for 5 hours of work.
18      Had Nielsen used the Court's
19 power and prevented me from communicating with Ronda, I believe she would have
20 continued to use the company car as leverage until Nielsen paid her the money she was
21 owed.  I believe Nielsen would have been forced to get the police involved, and Ronda
22 would have been charged with one or more felonies.  With my advice, not only was Ronda
23 **not** arrested, she got paid the hundreds of dollars that Nielsen owed her.
24      I was not trying to do discovery in any way when I was helping Ronda.  Ronda
25 voluntarily provided me documents when I was trying to help her.  The documents Ronda
26 provided me have **nothing** to do with my lawsuit.  I would **not** have filed any of this in any
27 court filing but for Defendants' meritless ECF 107 letter-motion and accusations against
28 me.

1    Plaintiff believes Defendants' protective order motion was not only filed in bad faith
2 without first conferring, but may have been used in an attempt from stopping Liu from
3 helping people who were wronged by Nielsen.  I will lay out more reasons in my official
4 response, but I need an extension to do that.
5    However, I hope the Court sees the truth that Defendants did not confer in good faith.
6 I am respectfully requesting the Court either grant me until September 30, 2024 to fully
7 respond to Defendants ECF 107 letter-motion, or for the Court to strike ECF 107 because
8 Defendants did not confer in good faith before filing their ECF 107.  And since discovery is
9 stayed, Plaintiff is unsure how they can even invoke a 37.2 conference right now, especially
10 considering Plaintiff was not emailing Nielsen employees about discovery.
11
12                                         Respectfully submitted,
13                                         *Frank Liu* (signature)
14    Dated 9/17/2024                      Frank Liu
15                                         Pro Se Plaintiff