1  Frank Liu

2  304 S. Jones Blvd #3416

3  Las Vegas, NV 89107

4  818-835-0498

5  frank.liu.96@gmail.com

6  Pro Se Plaintiff

7                    **IN THE UNITED STATES DISTRICT COURT**

8                    **FOR SOUTHERN DISTRICT OF NEW YORK**

9

10

| | |
|---|---|
| Frank Liu<br>        Plaintiff,<br>        vs.<br>The Nielsen Company (US) LLC<br>        and<br>TNC US HOLDINGS<br>        Defendants. | **Case #1:22-cv-09084-JHR-OTW**<br><br>**Letter to Judge Wang Regarding Defendants'**<br>**Misrepresentations in ECF 128** |

1   Dear Judge Wang,

2          Just hours after Defendants filed ECF 128, the Court denied Plaintiff's Motion to Lift

3   Stay on Discovery (ECF 127), so Plaintiff did not have an opportunity to address some of

4   the things Defendants misrepresented in their opposition filing to Plaintiff's motion.

5   Although, <u>Plaintiff does not object to Hon. Judge Wang's Order</u> (ECF 129) extending the

6   stay in discovery until March 7, 2025, Plaintiff feels obligated to write this letter due to

7   Defendants' misrepresentation of facts in their ECF 128 filing.

8          On page 4 and 5 of **ECF 128**, Defendants alleged the following:

9          Defendants' counsel or the authorization of a court order[1]. (*Id.*) Judge Wang granted Defendants'

10         request for a protective order and directed Plaintiff "to refrain from contacting or communicating

11         with current or former Nielsen employees in any manner regarding the subject matter of this

12         litigation without the presence or consent of Defendants' counsel." (ECF No. 110 at 2–3.) Since

13         then, and despite the unambiguous language of this Order, Plaintiff has sought to find any

14         loophole around it – reaching out repeatedly to Defendants' counsel for consent to communicate

15         with a former Nielsen employee and/or requesting Defendants' presence during his

16         communications with said employee (Defendants refused such requests). Staying discovery until

17         Plaintiff is appointed *pro bono* counsel is both necessary and appropriate to limit abuse of the

18         discovery process.

19

20         Plaintiff believes Defendants' attorneys have misled the Court regarding the emails

21   referred to in Defendants' ECF 128 filing, and thus in good faith is attaching **Exhibit 1** for

22   the Court to review.

23         The emails will show that Plaintiff reached out to Cardelle Spangler and Caitlin

24   McCann in good faith because he discovered Ania Howard's pro se lawsuit on the Internet,

25   and after Nielsen filed their motion to dismiss Ania Howard's Amended Complaint in Jan.

26   of 2025, Liu wanted to reach out to Ms. Howard because Liu thought he might be able to

27   provide Ms. Howard some insight based upon Liu's own experiences being a pro se

28   plaintiff that may help Ms. Howard, from one pro se plaintiff to another, or at the very least,

1   provide Ms. Howard some moral support to encourage her to keep fighting for her rights.

2       Based on Ms. Howard's lawsuit filings, it appears she was a Membership

3   Representative for Nielsen Audio, Inc.  Her lawsuit filings does disclose her phone number

4   and email address.  Because of the protective order, Liu did not reach out to Ms. Howard,

5   but wanted to, so in good faith, Liu asked Ms. Spangler and Ms. McCann for permission to

6   reach out to her.  The Court can review the email sent in <u>Exhibit 1</u>.

7       Liu's email made it clear that the purpose of communicating with Ms. Howard is not

8   for discovery related reasons for Liu's lawsuit.  Below is an excerpt of the email with

9   certain parts underlined in red for emphasis:

10      I am reaching out to you in good faith to inquire if I have your consent and/or Nielsen's consent to communicate with Ania Howard who is a former
        Nielsen employee who worked for the Nielsen Audio, Inc division. She is currently suing Nielsen Audio, Inc under the case "Howard v. Nielsen

11      Audio, Inc." (Case # 4:24-cv-04545 filed in the US District Court for the Southern District of Texas)

        I discovered her lawsuit while searching PacerMonitor.  After discovering the lawsuit, I have been following the lawsuit's progression.  It appears
12      an attorney representing Nielsen filed a motion to dismiss Ania Howard's lawsuit on Jan 17, 2025.  I am reaching out to you in good faith to see if
        you and/or Nielsen will allow me to communicate with Ania Howard because I think I might be able to provide her some insight that may help her

13      with her lawsuit, or at least provide her moral support.  Ania Howard is also pro se (just like I am pro se), and for pro se parties, litigating lawsuits
        pro se is difficult.  I'd like to reach out to her so I can hopefully provide her moral support and perhaps give her some insight about my legal
        journey as a pro se plaintiff which might be helpful for her because she is also pro se.  I am not a lawyer, and if I am allowed to communicate with

14      her, I will let her know I'm not a lawyer.  However, in talking about my lawsuit and giving examples of my experience, I think it may provide her
        some valuable insight for her pro se journey into fighting for her civil rights.

15
        To be clear, the purpose of communicating with her is not for discovery related reasons for my lawsuit.  Her lawsuit does not relate to my lawsuit

16      because (from reading her amended complaint), it looks like she was terminated by Nielsen sometime in October of 2024.  I don't think she was
        even an employee at Nielsen back when I worked at Nielsen.  I am guessing she was hired months or years after my termination from Nielsen.

17      Another difference between me and her, is that I did not recruit homes for the audio side of Nielsen, while she did recruit homes for "Nielsen
        Audio, Inc."

18      Ms. Howard's lawsuit does not relate to Liu's lawsuit because (from reading her

19  amended complaint), it looks like Ms. Howard was terminated by Nielsen sometime in

20  October of 2024.  Liu does not believe Ms. Howard was even an employee at Nielsen back

21  when Liu worked at Nielsen.  Another difference between Ms. Howard and Liu, is that Liu

22  did not recruit homes for the audio side of Nielsen, while Ms. Howard did recruit homes for

23  "Nielsen Audio, Inc."

24      Liu discovered Ms. Howard's lawsuit nearly a month after she originally filed her

25  lawsuit.  After Nielsen filed their motion to dismiss, from Liu's calculation, Ms. Howard

26  had until Feb. 7, 2025 to oppose Nielsen's motion to dismiss, and Liu was worried she

27  might miss her deadline to respond to it.

1    If Liu could have been allowed to communicate with Ms. Howard before her
2    deadline to oppose the motion to dismiss elapsed, he would likely have informed her she
3    could either: **a)** amend her complaint by the deadline, or **b)** file a response by the deadline,
4    or **c)** motion the court for more time to submit an amended complaint, or **d)** motion the
5    court for more time to file her response to Nielsen Audio's motion to dismiss.  Even though
6    Nielsen prevented Liu from reaching out to Ms. Howard, Liu continued to keep track of Ms.
7    Howard's lawsuit through CourtListener because the website keeps track of filings for Ms.
8    Howard's lawsuit.  Liu respected that Ms. Howard was fighting for her rights, even though
9    he was prevented by Nielsen from contacting her.

10    Ms. Howard <u>did not</u> file an opposition to Nielsen's motion to dismiss before her
11    deadline elapsed, and Liu was worried that the Court might just dismiss her lawsuit because
12    of that, and she wouldn't get any justice.  However, on Feb. 14, 2025, Liu saw good news,
13    because it looks like Nielsen and Ms. Howard settled the lawsuit because a joint stipulation
14    for dismissal with prejudice was docketed by Carolyn Russel who works at Ogletree,
15    Deakins, Nash, Smoak & Stewart, P.C.
16    https://storage.courtlistener.com/recap/gov.uscourts.txsd.1981477/
17    gov.uscourts.txsd.1981477.17.0.pdf (ECF 17 of Ania Howard's Lawsuit)
18

19    **Ms. Howard's ECF 5**
20    It appears Ms. Howard might have fallen into some of the pitfalls other pro se
21    litigants may fall into.  For example, Ms. Howard filed ECF 5, which based on Liu's own
22    experience, he does not believe it is something that Ms. Howard should have filed with the
23    Court.  However, since ECF 5 is also listed publicly on at least two websites
24    (CourtListener.com and Archive.org), and from Liu's perspective, he is allowed to reference
25    things that are publicly available to download on the Internet, he will reference it in this
26    filing because there is a good reason to do so.
27    Liu is glad that Ms. Howard and Nielsen Audio, Inc. found a resolution because
28    being pro se is hard.  However, despite there appearing to be a settlement for Ms. Howard's

1  lawsuit against Nielsen Audio, Inc., Liu thinks if he is allowed to communicate with Ms.

2  Howard, he can still provide her some insight that could help Ms. Howard.

3       **Based on Ms. Howard's ECF 5 filing**, which is free to view and download on both

4  CourtListner - https://storage.courtlistener.com/recap/gov.uscourts.txsd.1981477/

5  gov.uscourts.txsd.1981477.5.0.pdf  and also Archive.org –

6  https://archive.org/download/gov.uscourts.txsd.1981477/gov.uscourts.txsd.1981477.5.0.pdf,

7  it appears that Ms. Howard had a lawyer representing her during per-litigation with Nielsen

8  Audio Inc., however, the lawyer declined to file a lawsuit against Nielsen Audio, Inc. after

9  Ms. Howard declined a settlement offer, so that was why Ms. Howard had to file a pro se

10  lawsuit on her own behalf.

11      On page 10 of the ECF 5 PDF that is free to download on CourtListener (and also

12  available to the public on Archive.org), there is an email that suggests the attorney or law

13  firm that represented Ms. Howard during per-litigation might have a **lean on the lawsuit's**

14  **settlement funds**, even though Ms. Howard ended up having to file pro se, and was able to

15  resolve her lawsuit on her own without an attorney.  Details in Howard's ECF 5 makes it

16  clear that her pre-litigation attorney would not file a lawsuit on her behalf against Nielsen

17  Audio, Inc., so that was the primary reason why she went pro se.

18      Liu believes a popular YouTube attorney, who is also an officer of this Court, named

19  Vincent P. White, Esquire, made a video that may be of some help to Ms. Howard.  The

20  video Vincent P. White made goes into details about leans after switching attorneys.  Mr.

21  White recommended the idea of negotiating with the attorney over the lean, or perhaps

22  going through a fee dispute process to determine what is fair should a lawyer not give up

23  his/her lean.  **Mr. White's video is available here:**  https://www.youtube.com/watch?

24  v=CTTgGYJDaQs

25      Although Ms. Howard did not switch attorneys because she ended up having to

26  represent herself in court, Liu believes Mr. White's video may still be relevant to Ms.

27  Howard's situation, so if Liu is allowed to contact Ms. Howard now that she settled her

1  lawsuit, Liu would like to tell her about the video and perhaps the video Mr. White made

2  may be of some help to her.

3        While Liu does not know exactly how much Ms. Howard settled for, he can only

4  speculate it is for **at minimum** the amount listed in ECF 5, which is publicly available to

5  download from both CourtListener and Archive.org.  Ms. Howard's ECF 5 provides a lot of

6  insight regarding matters that are behind the scenes.  Liu played no part in Ms. Howard's

7  ECF 5 filing.  After all, Liu found Ms. Howard's lawsuit nearly a month after she filed the

8  lawsuit and by the time Liu found out about Ms. Howard's lawsuit, ECF 5 had already been

9  docketed.  Had Liu discovered Howard's lawsuit at the very beginning, and had known

10 about Ms. Howard's intent of filing ECF 5, and if Liu was allowed to communicate with her

11 before she decided to file ECF 5, then Liu probably would have suggested that she **not** file

12 what she filed based on Liu's own experiences litigating pro se in this lawsuit.

13 Furthermore, it's unclear why Ms. Howard even motioned for an injunction to toll her

14 statute of limitations when an amended complaint relates back to the first filed complaint,

15 and her first filed complaint was filed within the 90 day EEOC Notice of Right to Sue

16 Letter.  The point Liu is trying to make here, is that there is some general knowledge a pro

17 se non-lawyer learns through experience litigating that may help other pro se non-lawyers

18 with their own pro se lawsuits.

19       Although Howard's lawsuit appears to be now settled, it's important to mention ECF

20 5 because there is a specific video Mr. White recently made that might help Ms. Howard.

21 The video in question is titled, "*Do I have to stick with the attorney I hired? What happens*

22 *if I switch representation?*" and is available here: https://www.youtube.com/watch?

23 v=CTTgGYJDaQs where Mr. White talks about his opinion regarding leans on lawsuits

24 after the original lawyer no longer represents a plaintiff.

25       Not only does the video suggest negotiating the lean amount or percentage with the

26 attorney, around the 8:11 mark of the video, Mr. White even states, *"Often, under many*

27 *retainer agreements in this field, you'll have the option to take the attorney to arbitration to*

28 *figure out what their proper lean should be, right?  You also, in many states, have access to*

6

1   *a fee dispute process. This is certainly the case in New York. Uh, it's the case in many parts*
2   *of the country.*"  Furthermore, Mr. White goes into detail how a fee dispute process works.

3         Plaintiff believes Mr. White's video could be helpful to Ms. Howard because
4   according to Ms. Howard's ECF 5 filing, there appears to be a lean over settlement funds
5   for Ms. Howard's lawsuit.  Liu believes if he could reach out to Ms. Howard and provide
6   her the link to Mr. White's video, it's possible she may find it useful and perhaps, she could
7   try to find a resolution with the attorney or law firm that is both fair for her and for the
8   attorney or law firm that refused to file the lawsuit in the first place.  From reading ECF 5,
9   Liu believes the attorney who represented Ms. Howard could potentially be categorized as a
10  settlement artist, and after Ms. Howard refused to settle, the attorney and law firm dropped
11  her because they didn't want to litigate.  Since it does appear Ms. Howard settled her
12  lawsuit on her own, perhaps it may be a good resource for her to watch Mr. White's video
13  and be educated on her options regarding the lean, so she can decide what her best course of
14  action is moving forward.

15        Liu would have preferred if Nielsen would have allowed Liu to communicate with
16  Ms. Howard but they refused to allow that, even though Nielsen does not represent Ms.
17  Howard whatsoever.  Had Nielsen not misrepresented facts regarding Liu's request to be
18  allowed to communicate with Ms. Howard in ECF 128, Liu might not have even bothered
19  to bring up ECF 5 to this Court.  However, bringing up ECF 5 is important to establish how
20  Liu's desire to reach out to Ms. Howard is not related to discovery for Liu's own lawsuit.
21  Before Ms. Howard's lawsuit was settled, Liu wanted to at least provide Ms. Howard moral
22  support because being pro se is hard.  Now that Ms. Howard's lawsuit is resolved, Liu
23  would like to provide Ms. Howard the link to Mr. White's video because Liu believes it
24  could help her based on what Liu was able to learn after reading through Ms. Howard's
25  ECF 5 filing.  Liu wants to help Ania Howard if he can do so.  Not many people who were
26  discriminated against go though with fighting for their rights, and Ms. Howard has earned
27  Liu's respect because she stood up for her rights pro se.

1    Furthermore, Liu believes the people who frequently watch Mr. White's videos, will

2    know Mr. White enjoys making YouTube videos to answer free legal questions.  Plaintiff

3    believes Mr. White is not only a good person, but a good lawyer who provides free answers

4    through his YouTube channel by answering questions for free.  Furthermore, here is the link

5    to a website that shows Mr. White is a real attorney that has been admitted to practice law in

6    multiple jurisdictions in the State of NY: https://www.nycjobattorney.com/attorney/vincent-

7    p-white/  The video Liu wants to tell Ms. Howard about was created by a real lawyer.

8    When Ms. Howard and Nielsen Audio were still engaged in litigation, Liu could have

9    provided her moral support and informed her of free resources, such as Mr. White's

10   YouTube Channel where she could ask him free questions.  Liu fails to see why Nielsen

11   denied Liu's request to communicate with Ms. Howard, even though it is clear Nielsen does

12   not represent her in any way.  This goes to show that Nielsen's use of the protective order is

13   more of a rule 65 injunction, rather than a discovery protective order under Rule 26(c).

14

15   **Conclusion**

16   The purpose of this letter is to correct the record against Defendants'

17   misrepresentation of facts.  One reason why it is important is because a volunteer lawyer

18   thinking about representing Liu will probably review the docket before deciding if he or she

19   will represent Plaintiff.  Liu imagines that if the lawyer believes the misrepresentations Ms.

20   Spangler made in ECF 128, it could potentially cause a volunteer lawyer to have second

21   thoughts about representing Liu.

22   In ECF 128, Cardelle Spangler intentionally misrepresented facts to the Court in

23   order to support her motion opposing lifting the stay in discovery.  Spangler alleged

24   "*Plaintiff has sought to find any loophole around it – reaching out repeatedly to*

25   *Defendants' counsel for consent to communicate with a former Nielsen employee and/or*

26   *requesting Defendants' presence during his communications with said employee*

27   *(Defendants refused such requests)*" when Ms. Spangler knew the request did not have

28   anything to do with discovery for Liu's lawsuit.

1       Moreover, reaching out to Spangler and McCann for permission to communicate

2   with Ania Howard is **not** a "loophole" because Judge Wang's Order (ECF 110) specifically

3   mentioned the words, "presence or consent" in her order.  After discovering Ms. Howard's

4   lawsuit, Liu refrained from reaching out to Ms. Howard, and even sought permission from

5   Nielsen's lawyers, and made a good faith effort to explain how his request **was not**

6   discovery related for his lawsuit.  The way Spangler decided to misrepresent facts and

7   frame the emails in such a negative light is disappointing.  However, Spangler's actions are

8   not surprising based on how Nielsen misrepresented facts to get the protective order issued

9   in the first place.

10       For now, Plaintiff urges the Court to review the emails in in question contained in

11  Exhibit 1.  Plaintiff is submitting this letter to correct the record because Ms. Spangler has

12  misrepresented facts in Nielsen's ECF 128 filing.  Furthermore, Plaintiff is working on a

13  motion to dissolve the protective order because Nielsen and their lawyers also

14  misrepresented facts to get the protective order issued in the first place.

15       The email titled "How Nielsen destroyed my life – The story of a former Nielsen

16  Ratings employee's quest for Justice" referenced in Defendants' ECF 107 filing had nothing

17  to do with discovery for my lawsuit against Nielsen.  Part of the reason why I have not

18  shared the email in question with the Court to correct the record is because the email is very

19  personal and mentions a time when I considered doing something to myself when I was

20  overseas to end the pain Nielsen has caused me.  However, it is now clear that I need to set

21  the record straight regarding Nielsen's ECF 107 filing, and I have been working on a

22  Motion to Dissolve the Protective Order.  It is obvious Nielsen will keep on misleading the

23  Court and bring up the protective order in order to advance their narrative, so I do believe I

24  need to finally submit my motion to dissolve once I am finished with the motion.  And then,

25  the Court can see for themselves that the email had **nothing** to do with discovery for this

26  lawsuit whatsoever.

27       When I am finished with the Motion to Dissolve Protective Order, I will submit it to

28  the Court.  The motion to dissolve is taking a long time to complete because it is lengthy

and emotionally draining to work on.  From my perspective, I did nothing wrong by

sending the emails, especially when the emails had nothing to do with discovery for my

lawsuit against Nielsen.  And because of the emails sent, at least one former Nielsen

Membership Representative has reached out to me for help.  Justin Chapman reached out to

me because Justin was also discriminated against by Nielsen.  However, as seen below, I

adhered to the protective order, and told Justin Chapman that I **could not** help him.

       Here is a **teaser** of what will be in Liu's Motion to Dissolve.  Below is an email

showing Justin Chapman (former Nielsen Membership Representative) reached out to Liu

for help regarding filing with the EEOC:



Although Liu wanted to help Justin Chapman, because of the protective order that was

issued, Liu informed Justin he could not help him.



1    Furthermore, because Justin emailed Liu in October of 2024, it is likely that his time

2  to file with the EEOC is running out.  After all, it may take a while to get an EEOC intake

3  interview after submitting an initial inquiry.  Liu does not know if Justin Chapman has since

4  filed his discrimination complaint against Nielsen with the EEOC or not.  Liu would have

5  liked to help Justin and provide him moral support because Liu believes it takes a strong

6  person to stand up for their employment rights.  But because of how Nielsen lied to the

7  Court to get the protective order issued, Nielsen has prevented Liu from helping others in

8  fighting for their own employment rights against Nielsen.

9    Here is **another teaser** of what will be discussed in Liu's Motion to Dissolve.  Ronda

10  McCallen (a former Nielsen Membership Representative) also reached out to Liu for help.

11  Liu was able to help Ronda before the protective order was issued by the Court.



1   Nielsen was going to report the company

2   car as stolen.  Ronda was trying to use the

3   company car as leverage to force Nielsen to

4   pay her for all her hours worked.  Liu

5   convinced Ronda to return her company

6   car.

7         Liu told Ronda to return the

8   company car and suggested she handle

9   things the right way.  Ronda took Liu's

10  advice regarding filing with a state or

11  federal agency and did handle things the

12  right way by reporting Nielsen to her

**ISSUE 4 – Unpaid Bonuses**

Ms. McCallen claims she is entitled to certain bonuses. She exchanged emails with Nielsen's HR function on that topic (among others) last week. *See* **Exhibit F**. Nielsen confirmed for Ms. McCallen that she is entitled to a bonus of $333 for certain incentives she earned in May 2024. In accordance with Nielsen policy, Ms. McCallen will be paid this $333 bonus on July 26, 2024.

**ISSUE 5 – Work on Off Day**

Ms. McCallen claims that she worked for a few hours during a day off (June 11, 2024) but says she was instructed by her supervisor not to record hours worked on that day. This appears to have stemmed from a misunderstanding. Nielsen expects that when non-exempt employees take a day off, they will perform no work on that day. Ms. McCallen claims that she worked anywhere from 2.5 to over 4 hours on her off day. Out of an abundance of caution, giving Ms. McCallen all benefit of the doubt, and without admitting any wrongdoing whatsoever, the Company is issuing a check to Ms. McCallen for five (5) hours of work allegedly performed on June 11, 2024. It is my understanding the check has been issued. I will provide you with proof of payment as soon as I receive it.

***

I trust this information will allow you to fully investigate Ms. McCallen's claims and dismiss these claims. Should you have any questions or need any additional information, please do not hesitate to contact me.

Sincerely,

*Lee Tankle*

Lee E. Tankle

13  state's labor agency, and she got paid money she was owed.

14        Some time after helping Ronda, Nielsen sought a protective order against Liu.  If Liu

15  had not convinced Ronda to return the company car, then Nielsen would have reported the

16  car as stolen, and Ronda would have likely been charged with one or more felonies.  Ronda

17  reached out to Liu for help.  Liu helped her.  All this happened before the protective order

18  was issued.  However, because of the Protective Order (ECF 110), Liu can no longer

19  communicate with Ronda McCallen.

20        Ronda believed her manager discriminated against her based on her gender.  From

21  Liu's understanding, she only submitted an EEOC inquiry and did not actually submit an

22  official complaint to the EEOC because that usually happens sometime after an EEOC

23  phone interview takes place.  Because of the protective order, Liu stopped communicating

24  with Ronda and providing her moral support to further fight for her employment rights.

25        When the motion to dissolve is finished and submitted, I hope the Court will

26  carefully review it, and perhaps schedule a telephonic conference to get to the bottom of

27  everything.  For now, at least Liu addressed some of the misrepresentations Defendants

28  made in their ECF 128 filing.  Should a "pro bono" lawyer read this during their docket

review process before deciding if they want to represent Plaintiff or not, then Plaintiff urges the "pro bono" volunteer lawyer to consider the possibility the protective order against Liu was wrongfully issued after Nielsen Defendants misrepresented things in their ECF 107 filing.  Nielsen's ECF 107 was docketed on Friday 9/13/2024 (at or around 5:18 PM EST), and the Protective Order (ECF 110) has a date stamp of 9/16/2024 (which is the following Monday).  Liu writes this message for the potential "pro bono" lawyer in this letter because no "pro bono" volunteer lawyer has reached out to Liu thus far to represent Liu for this lawsuit.  Liu believes it's possible that the protective order against Liu may be something that may have a detrimental effect in the eyes of a lawyer, and may hinder a "pro bono" volunteer lawyer into agreeing to represent Liu.  The protective order against Liu is even publicly listed on third-party websites such as https://casetext.com/case/liu-v-the-nielsen-co-us-7 for everyone who searches for it to find, and so Liu believes he needs to clear his name, and will do so, when he submits his Motion to Dissolve Protective Order in the future for the Court to consider.

Plaintiff respectfully requests the Court to consider his motion after he files it. Plaintiff does not believe he had a real opportunity to address Defendants' ECF 107 before the Court issued their ruling.  And the Court's ruling even stated, "*The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.*"  Plaintiff has complied with the Court Order (even reaching out to Defendants for permission to contact Ms. Howard as shown in Exhibit 1).  Defendants have misrepresented facts to the Court, so Liu **will** submit a motion to dissolve the protective order in the future after he is finished drafting it.

**Furthermore, Nielsen and their lawyers are using the protective order as a Rule 65 injunction rather than a discovery related protective order**.  There was simply no good faith reason why Nielsen denied Liu's request to contact Ms. Howard.  And in ECF 128, in order to support Nielsen's Opposition to Lifting the Stay in Discovery, Nielsen brought up Liu's request to contact Ania Howard and accused Liu of trying to find a

1    "loophole" around the protective order, even though Liu made it crystal clear the purpose of

2    contacting Ania Howard was not related in any way to discovery for Liu's lawsuit.  Liu just

3    wanted to see if he can help Ms. Howard, or at the very least provide her moral support

4    from one pro se to another.  Nielsen does not represent Ms. Howard, and it's clear that Ms.

5    Howard was suing Nielsen Audio, Inc. (which is part of the overall Nielsen company).

6          Plaintiff hopes the Court reviews Exhibit 1 and determine for themselves if the

7    emails reflect what Defendants wrote on page 4 and 5 of their ECF 128 filing.  Lastly,

8    Plaintiff understands this letter is long and appreciates Judge Wang taking the time to read

9    this letter.

10

11                              Respectfully submitted,

12

13

14    Dated 2/21/2025          Frank Liu

15                              Pro Se Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28