```
    P5E4LIUC
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FRANK LIU,

            Plaintiff,

       v.                            22 Civ. 9084 (OTW)

THE NIELSEN COMPANY, et al.,
                                     Conference

            Defendants.

------------------------------x
                                     New York, N.Y.
                                     May 14, 2025
                                     11:00 a.m.

Before:

                  HON. ONA T. WANG,

                                     U.S. Magistrate Judge

                      APPEARANCES

SOKOLOFF STERN LLP
     Attorneys for Plaintiff
BY:  BLAIR HENDRICKS

WINSTON & STRAWN LLP
     Attorneys for Defendant
BY:  CARDELLE SPANGLER
```

1              (Case called)

2              MS. HENDRICKS:  Good morning, your Honor.  This is
3    Blair Hendricks from the Law Office of Sokoloff Stern LLP on
4    behalf of plaintiff, Frank Liu.

5              MS. SPANGLER:  Good morning, your Honor.  Cardelle
6    Spangler, Winston & Strawn, on behalf of the Nielsen
7    defendants.

8              THE COURT:  Good morning.  All right.  Thank you both
9    so much for being here.  It's a pleasure to see you here in
10   person.  We are here for a status conference on the record
11   after several unsuccessful attempts to settle the case.

12             And in particular, Ms. Hendricks, thank you so much
13   for appearing and stepping in as *pro bono* counsel for Mr. Liu.
14   Thank you for your service.

15             All right.  I have a couple of things, I just wanted
16   to get some understanding of is where we are in discovery.  So
17   I might start with asking Ms. Spangler because you've been on
18   the case all along.  I know that when we were either talking
19   about settlement or preparing to talk about settlement, we have
20   talked about providing Mr. Liu some informal disclosures.  Has
21   any either informal or initial production of discovery taken
22   place?

23             MS. SPANGLER:  Thank you, your Honor.  I apologize.  I
24   have a little bit of a cold.

25             So Mr. Liu had asked Nielsen in an email to provide

1    him with his workers' compensation file.  That was some time
2    ago, well over a year.  And we initially did not think that the
3    request was a proper one that came before your Honor.  And you
4    asked us to provide that information to him, which we did.
5    Now, I think Mr. Liu does not think that production is
6    complete, but it is.  We have now gone back and we have looked
7    at every nook and cranny, and we believe we have located and
8    produced all of the documents related to his workers'
9    compensation file.  Beyond that, there has been no discovery of
10   any kind.
11            THE COURT:  Okay.  So the workers' comp file has been
12   produced, and that's it?
13            MS. SPANGLER:  Correct.
14            THE COURT:  All right.  Now, Ms. Hendricks, do you
15   have any other thoughts on how you wish to proceed?  I
16   understand you are very early.  You just filed your notice of
17   appearance in the case.  But do you think it would be
18   productive to talk about settlement again?  Do you think that
19   maybe you would like to get through at least some initial
20   disclosures or anything else?  If you need some time, I'm happy
21   to give you that time.  Since I have set the fact discovery
22   deadline for today, knowing that we would be extending it.  So
23   let's hear your initial thoughts about how you think we should
24   proceed.
25            MS. HENDRICKS:  Sure, your Honor.  Thank you.

1           Based on the initial conversations that we had with
2    Mr. Liu, defense counsel is correct that he does believe there
3    are some documents that are outstanding.  Yesterday evening he
4    conveyed to us the documents that he has relevant that we have
5    yet to review in this matter.  So I think one of the first
6    orders that we will have to do is compare what Mr. Liu received
7    against what he asked for and determine is there anything
8    outstanding, and if it's something that's not in possession of
9    defense counsel but something that he needs that might be in
10   possession of another party or a third party, we can advise him
11   as to that and take it from there.
12           We are also in process -- as the docket has quite a
13   number of filings on it, we have been going through and
14   catching ourselves up on the case.  As I understand there is a
15   Title VII and race discrimination and retaliation claims that
16   remain.
17           Based on our conversations, I do think that Mr. Liu is
18   still open to settlement.  I know he is concerned about
19   confidentiality, but I think maybe with the guidance of an
20   attorney, settlement discussions might be more productive
21   moving forward.  I understand there has been some previous
22   offers and demands that have gone back and forth.  So I think
23   what might make sense is to continue on with discovery for the
24   sake of moving the case forward.  Unfortunately, we still have
25   to review what it is that we've received to just know what

1    Mr. Liu has or what documents may or may not be relevant in
2    this case.  But we are happy to convey any settlement offers to
3    Mr. Liu and be able to advise him with the benefit of him now
4    having an attorney or potentially having a discussion with
5    defense counsel.  I believe that's something that might be
6    productive in the near future, but I think the first order is
7    to just finish our review of the docket and the documents that
8    we received from Mr. Liu.
9              THE COURT:  Okay.  Why don't we do this, I was going
10   to give you until Friday to file a new proposed case management
11   plan, but maybe I'll give you a week instead, so May 21st.
12   Think about a reasonable date for your initial and informal
13   disclosures.  Because I think that might be helpful in
14   organizing everybody's thoughts about what discovery we might
15   want to prioritize in the first instance that, A, might be
16   helpful in the litigation of the case but also, B, also might
17   be helpful in terms of thinking about settlement and in
18   thinking about what facts are out there.  I would like to look
19   at this like a little bit of a fresh start.  So a little bit of
20   a fresh start not only on discovery and thinking about
21   litigation now that we have a lawyer in place for Mr. Liu but
22   then also as that develops, people's perspectives may change on
23   settlement.  I think we've been talking about settlement for so
24   long and pretty intensively and particularly for Mr. Liu who
25   has had all this happen to him, that it might be helpful to

1   have a little bit of distance, take a little breather for
2   settlement.  I'm not talking about a long breather, but maybe
3   think about talking after initial disclosures and your initial
4   production, whether it's the workers' comp file or some other
5   files, an employee file or something like that that Nielsen
6   might have.
7              MS. SPANGLER:  May I just say, your Honor?
8              THE COURT:  Yep.
9              MS. SPANGLER:  We are honestly pleased that had
10  Mr. Liu was able to obtain *pro bono* counsel.  And as you know,
11  we have tried mightily to resolve this case.  In our last
12  discussion with the Court -- and I won't go into the details
13  because we are on the record -- you have proposed as Mr. Liu
14  has repeatedly asked that the Nielsen defendants considered the
15  one stumbling block, let's put it that way, that has been there
16  for Mr. Liu, which I believe Ms. Hendricks just alluded to.  We
17  had time to think about that, and we actually do have a
18  proposal for Ms. Hendricks and Mr. Liu.
19             THE COURT:  Okay.
20             MS. SPANGLER:  And so we would actually like to have a
21  little bit of time to talk about that.  Anything we do in
22  discovery, of course, expends resources, et cetera.  It doesn't
23  mean we won't do it, of course we will.  But if we can have
24  that initial conversation after they had a chance to look at
25  the file, which we understand they are going to need sometime

1    to do that, we think that there is a possibility that this
2    action could get resolved relatively quickly.
3             THE COURT:  When you say "look at the file" --
4             MS. SPANGLER:  I think she wanted to look at the
5    docket, to look at the workers' comp file we already produced
6    versus what Mr. Liu think should have been produced.  I think
7    those are the two things that I heard, at least to get a basic
8    understanding of the case and where we are.  I obviously
9    completely understand that.  We think there is a possibility
10   that we could get this resolved relatively quickly.
11            THE COURT:  Okay.  Are there -- and I know
12   Ms. Hendricks, I'm putting you a little bit on the spot here --
13   but are there other documents, and maybe Mr. Liu has actually
14   included them in some of his pleadings.  For example, I recall
15   the text conversations that he may have included in his
16   complaint or in the amended complaint, is there an employee
17   file or anything else that might have information that could
18   help Ms. Hendricks get up to speed that is relatively easy for
19   Nielsen to produce as well?
20            MS. SPANGLER:  I would have to ask.  Everything is a
21   little bit of a chore.  Part of the issue is just the case is
22   relatively old, so pulling the documents takes a little bit of
23   time.  We could certainly ask the question.  I don't have a
24   problem with that.
25            THE COURT:  It may be the communications and certainly

1   the communications that Mr. Liu is most upset about are -- I do
2   recall seeing some of them.  The workers' comp file may
3   actually shed some light because as I recall from the facts, he
4   was trying to return to work after an injury and that is around
5   the same time that he was terminated.  So maybe the workers'
6   comp file will be able to work as a little bit of a structure
7   to frame that chronology around the time when Mr. Liu left
8   Nielsen's employment, but I leave that up to you.  And
9   certainly, keep the lines of communication open.  If there are
10  particular facts that you think would be helpful to just get
11  from Nielsen, even if they are in the context of "this will
12  help me think about settlement" or frame the settlement
13  conversation we have but also that you may have with your
14  client, Mr. Liu.
15          All right.  So does that mean that you would like even
16  more time for the case management plan then?
17          MS. SPANGLER:  If that would be amenable to the Court,
18  yes.
19          THE COURT:  You know what, you can also put in the
20  case management plan that you want some period of time to think
21  about settlement before embarking.
22          MS. SPANGLER:  That makes sense.
23          THE COURT:  You don't have to put the dates super up
24  front, but I think it would be helpful for all of us to have a
25  case management plan on the docket.  And particularly if

Case 1:22-cv-09084-JHR-OTW    Document 162    Filed 10/16/25    Page 9 of 10    9
P5E4LIUC

1  Mr. Liu wants to see what discovery has proposed since he is
2  not here today, and this is the first conference we had where
3  he is not even listening in, it might be helpful for him to see
4  that we have a plan going forward even if we are going to think
5  about talking settlement in the near term.
6              MS. SPANGLER:  Okay.
7              THE COURT:  So why don't I give you this, the proposed
8  case management plan by the 23rd.  I'm going to extend the fact
9  discovery deadline to June 1st without prejudice to future
10 extensions.  Your case management plan should enter dates, but
11 those dates may be extended also if we think we are proceeding
12 on settlement, I may also stay the case, pending some
13 settlement discussions.  So don't feel like the dates that you
14 have, have to show that you are going to do discovery in 60
15 days.  I'm not expecting that in this case.  I totally
16 understand we are here now where we are.  But we do want to
17 have a plan for what might happen if settlement doesn't take
18 place.
19             MS. SPANGLER:  Yes.
20             THE COURT:  And I think it's also helpful for Mr. Liu
21 to be able to see that we do have a plan for discovery going
22 forward.
23             Let's see, the other thing in my case management plan
24 is a line about consenting or not consenting to my jurisdiction
25 for all purposes.  I didn't talk about it and didn't offer it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P5E4LIUC

1  or didn't discuss it at any time when Mr. Liu was representing
2  himself in part because he and I had had so many direct
3  conversations.  I didn't think that it would be appropriate to
4  then ask him and particularly because he is not a lawyer to ask
5  him whether he would consent to my jurisdiction for everything.
6  But now that he has a lawyer in place, you may want to have
7  that conversation again.
8            I'm going to remind everybody, of course, no negative
9  consequences for not consenting.  I'm here to manage the
10 pretrial process to help with settlement, if you think it would
11 be helpful.  And if that's the case, then Judge Rearden would
12 stay as the judge that would decide summary judgment and take
13 the case to trial if it goes that far.
14           Anything else we need to discuss on the record at this
15 time?
16           MS. SPANGLER:  Nothing from defendants, your Honor.
17           MS. HENDRICKS:  Nothing from plaintiff, your Honor.
18           THE COURT:  Okay.  I'm going to request the parties
19 order a copy of the transcript, split the costs 50/50.  I do
20 understand you are *pro bono*, but I think the cost should be
21 negligible.  That way Mr. Liu will also have a transcript of
22 this entire proceeding, so he won't feel like he missed
23 anything.  Thank you.
24           (Adjourned)
25